## THE STATE OF KANSAS V. THOMAS McGAFFIN.

1. INFORMATION — *Sufficiency* — *General Rule.* As a general rule it is sufficient if an indictment or information charges an offense in the language of the statute; and even the statutory words need not be strictly pursued, but others conveying the same meaning may be used.

2. MURDER; *Information; Charging Part, Sufficient.* The charging part of an information otherwise sufficient was, that "on the 26th day of November, A. D. 1885, in said county of Wabaunsee in the said state of Kansas, Thomas McGaffin did then and there unlawfully, feloniously, willfully, deliberately and premeditatedly kill and murder one Harrison Sherman, then and there being, by shooting him, the said Harrison Sherman, with a certain pistol commonly called a revolver, then and there loaded with powder and leaden bullets, which said pistol, so as aforesaid loaded with powder and leaden bullets, the said Thomas McGaffin then and there in his hands had and held; contrary to the form," etc. *Held,* That the terms employed in charging the offense are the equivalent of a statement that the killing was done intentionally and with malice aforethought, and express every element of the crime of murder in the first degree.

3. WITNESS — *Impeachment.* The credit of a witness may be impeached by showing that the statements made in his presence by another, and which were assented to and adopted by him as his own, are contrary to what he has testified at the trial.

4. ERROR *in Excluding Testimony.* The exclusion of such testimony upon the main question in the prosecution, where the conviction rests largely upon the evidence given by the witness sought to be impeached, is material error, which compels a reversal of the judgment of conviction.

*Appeal from Wabaunsee District Court.*

PROSECUTION brought against *Thomas McGaffin* for the murder of Harrison Sherman. The information charging the

appellant with the offense contained two counts, the first of which is as follows, ( omitting court and title :)

"I, W. A. Doolittle, the undersigned county attorney of said county, in the name, by the authority and on behalf of the state of Kansas, come now here and give the court to understand and be informed, that on the 26th day of November, 1885, in said county of Wabaunsee, in the said state of Kansas, Thomas McGaffin did then and there unlawfully, feloniously, willfully, deliberately and premeditatedly kill and murder one Harrison Sherman, then and there being, by shooting him, the said Harrison Sherman, with a certain pistol commonly called a revolver, then and there loaded with powder and leaden bullets, which said pistol so as aforesaid loaded with powder and leaden bullets, he, the said Thomas McGaffin, then and there in his hands had and held; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Kansas."

At the trial in March, 1886, the appellant admitted that he shot the deceased, but claimed that it was done in self-defense. Simeon Reeves, the only person who was present with the deceased and the appellant at the time the shooting was done, was called as a witness in behalf of the state. He gave an account of the difficulty, and among other things substantially stated that early in the morning the appellant, with a team and wagon, was about to drive upon a tract of land upon which Sherman lived, and of which he was in possession; but the land and its possession was claimed by appellant. The deceased, who was on horseback, discovered the appellant coming upon the land, and rode out some distance to meet the appellant, and told him that he must not come upon the land, and attempted to stop the horses which he was driving. Sherman declared that he would have the appellant arrested, and the appellant said, "Yes, I will shoot you," and then drew a revolver and fired one shot at Sherman. Sherman then wrapped the lash of a cattle whip which he had, around his hand, and struck at the appellant with it. The appellant then fired a second shot at Sherman, who then dismounted and was assisted by the witness into the house, where he soon afterward died. On cross-examination the witness stated that on the day following

he went to Burlingame in company with Alex. Smith. The following then occurred:

"Q. Do you remember seeing a man by the name of Carr there, when you were in company with Smith? I mean the man that Smith stayed all night with that night? A. Smith went off with a young fellow; I don't know who he was.

"Q. Did you meet the man that Smith went home with and stayed all night with at the time? A. Smith was with a man; he said he went home with him.

"Q. In that conversation on the evening you were in Burlingame there with Smith, and the man that Smith went home with and stayed all night with — didn't that man ask about how Sherman came to be killed? A. He did not ask me.

"Q. Did not he ask you or Smith? A. I do not know as to whether he asked Smith or not.

"Q. And did you not in response to that inquiry state that Sherman was out at the stable, and McGaffin came along and called him out to him and commenced shooting at him, or words to that effect? A. You mean did I make that statement?

"Q. Yes, sir. A. No, sir, I did not.

"Q. And then did not Smith say, 'Oh, hell! that is not the way you told me about it,' or 'That is not the way you told it to me,' or words to that effect?"

(An objection was made by the state, and the testimony excluded, to which ruling the defendant excepted.)

"Q. And then did not Smith proceed and say in substance that Reeves told him that he and Sherman were sitting in the shanty when you saw McGaffin coming, and Sherman said, 'I intend to take my whip and drive that old scoundrel off the farm,' and went out and got on his horse — went out and struck at McGaffin with his whip, and McGaffin shot at him, and he struck the second time, and McGaffin shot the second time, and he struck the third time, and then rode to the house?"

(The court sustained an objection to the question, and the defendant excepted.)

"Q. And when Smith made that statement, did you not say, 'I guess that is the way of it'?"

(This testimony was also excluded, and an exception to the ruling taken by the defendant.)

"Q. Did you not make these statements, and each of them, and did not Smith make these statements, and each of them, in your presence and hearing?"

(The court sustained an objection to this testimony, and the defendant excepted.)

The appellant testified in his own behalf, and as a part of his testimony stated that Sherman wrapped the whip-lash around his hand and struck at appellant with the handle of the whip, and that then appellant drew his revolver but purposely fired past Sherman; Sherman raised his whip a second time to strike the appellant, and he, believing that his life was in danger, shot a second time with the intention of striking Sherman.

The jury returned a verdict finding the defendant guilty of murder in the first degree. Motions for a new trial and in arrest of judgment were made and overruled. The sentence and judgment of the court were that Thomas McGaffin should suffer death by hanging by the neck until dead, at such time as the governor should appoint not less than one year from the 20th day of March, 1886; and that he should be confined at hard labor in the penitentiary until the sentence of the court was carried into effect. He appeals.

*J. R. Burton, Wm. Thomson,* and *J. F. Peffer,* for appellant.
*John T. Bradley, S. B. Bradford,* attorney general, and *W. A. Doolittle,* county attorney, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: The first objection taken to the conviction and sentence by the appellant is, that the information is insufficient to charge murder in the first degree, the offense of which he was found and adjudged guilty. The alleged omission or defect is, that it does not contain either the words "malice aforethought," or "with intent to kill." The charging part of the count in the information upon which the conviction rests is, that "Thomas McGaffin did then and there unlawfully, feloniously, willfully, deliberately and premeditatedly kill and murder one Harrison Sherman, then and there being, by shooting him," etc. Malice aforethought, or a wicked intention to kill, previously and deliberately formed, is an essential ingredient of the offense, and this element must be plainly charged in the information or indictment. It is not

important or necessary, however, that these identical words, or any particular form of words, should be used. The equivalent of these, or any words clearly expressing this element, is all that is required. The particularity of the common-law system or rules of pleading does not prevail here. As a general rule, it is sufficient if the offense is charged in the language 1. Information— of the statute, and even the statutory words desufficiency—
general rule. fining the offense need not be strictly pursued, but others conveying the same meaning may be used. (Crim. Code, § 108.) The language of the statute employed in defining the offense is, "every murder which shall be committed by means of poison, or by lying in wait, *or by any other kind of willful, deliberate, and premeditated killing,* . . . shall be deemed murder in the first degree." (Comp. Laws of 1879, ch. 31, § 6.) The information uses not only the statutory terms, but the words "unlawfully" and "feloniously" are added. The charge which it contains is brief, but we think it states in plain and concise language every element of the crime of which the appellant was convicted. It avers that the killing was done with premeditation, which means that there was design or intent before the act; that is, that the accused planned, contrived and schemed beforehand to kill Sherman. ( *Craft v. The State,* 3 Kas. 483; *Ernest v. The State,* 20 Fla. 383.) It is also charged that the accused deliberately killed Sherman, which means that the act was determined upon after reflection, and that "the consequences, chances and means were weighed, carefully considered and estimated" by him. ( *Craft v. The State,* supra.) It is further averred that the accused willfully killed the deceased, and he is thus charged with having killed the deceased purposely. The charge that the killing was done unlawfully and feloniously excludes the idea advanced by the appellant, that it could have been excusable or justifiable. The accused is therefore charged with having formed a wrongful and unlawful purpose to kill the deceased, and that in pursuance of this purpose and plan, determined upon after reflection, and after weighing the consequences, the homicide was committed by him. The terms employed by

the county attorney in charging the offense are the full equivalent of a statement that the killing was done intentionally and with malice aforethought, and therefore the omission of those identical terms from the charge does not render it subject to the objection that has been urged. ( *The State v. Fooks,* 29 Kas. 425; *The State v. Bridges,* 29 id. 138; *The State v. White,* 14 id. 538.)

2. Murder; information; charging part; sufficient.

Another objection made by the appellant is based upon the rulings of the court in excluding testimony. A witness for the state named Simeon Reeves gave his version of what occurred between the accused and the deceased at the time of the homicide, and his testimony tended to show that the appellant was the aggressor, and that he shot and killed the deceased without excuse or justification. With a view of showing that his testimony was unworthy of credit, he was asked on cross-examination if he did not take part in a conversation on the day following the homicide wherein he gave a wholly different account of the transaction. It seems that on the next day after the homicide the witness went to Burlingame with one Smith, and after their arrival there they met another person, named Carr. The inquiry on the cross-examination of the witness was, if at that time, when all three were present, the witness did not make a statement regarding the homicide in response to a question from Carr, when Smith interrupted with the remark: "Oh, hell! that is not the way you told me about it," or, "That is not the way you told it to me," or words to that effect. This was followed by another inquiry of the witness as follows: "And then did not Smith proceed, and say in substance that Reeves told him that he and Sherman were sitting in the shanty when the witness saw McGaffin coming, and Sherman said, 'I intend to take my whip and drive that old scoundrel off the farm,' and went out and got on his horse — went out and struck at McGaffin with his whip, and McGaffin shot at him, and he struck the second time, and McGaffin shot the second time, and he struck the third time, and then rode to the house?" The witness was

then asked if immediately following that statement he did not say, "I guess that is the way of it." The inquiries were refused, and the testimony was excluded by the court; and this ruling is assigned for error. These questions should have been allowed and answered. The purpose of the defense was to impeach the witness by showing that he had made statements out of court and soon after the occurrence contradictory to those made by him on the witness stand. This is a proper and effective mode of impeachment, and under the circumstances of this case the denial of the right is material error. The time, place, and the attendant circumstances, as well as the persons to whom the contradictory statements were made, were called to the attention of the witness, as the law requires. It is claimed in behalf of the state that as the statements were a portion of a conversation, and were partly made by Smith, they do not afford a sufficient foundation for the introduction of testimony contradicting Reeves. In other words, that the witness could not be impeached by testimony of what some one else had said. It should be remembered, however, that the defendant proposed to show that the witness not only assented to what Smith stated that the witness had previously told him, but he adopted and made the language of Smith his own by saying, "I guess that is the way of it." The witness could have admitted or denied the statements said to have been made and adopted by him, or he was at liberty to explain any inconsistency between the statements imputed to him and those given in testimony, just the same as though there had been a single and complete statement independent of any conversation. The testimony excluded was relevant to the issue and very important in the case. Reeves was the only person who witnessed the difficulty between the accused and the deceased, and the conviction for murder in the first degree rests almost entirely upon his testimony. The former contradictory version of the difficulty proposed to be shown harmonized with the theory and testimony of the defense. It tended to show that the accused was dangerously assailed by the deceased, and that the shooting

*3. Witness—impeachment.*

was done by the appellant in self-defense. At least it went strongly toward reducing the homicide to a lower degree than that with which the appellant has been charged, and of which he has been convicted. If the witness made the statements claimed by the defense, and which are radically different from his testimony, it may well be argued that he is unworthy of belief; and if his testimony were successfully impeached, or eliminated from the record, the conviction would certainly fail for lack of support; and therefore the importance of the testimony and the materiality of the error in its exclusion are readily seen. It may be that the testimony excluded would not have changed the result that was reached by the jury; but this we cannot know. It is enough that it was relevant, competent, and material, and being so it should have gone to the jury to aid them in determining whether the defendant had committed the offense charged, or any degree thereof.

4. Error in excluding testimony.

There is no other question in the case which we need to notice; but the view which we have taken renders a new trial necessary, and for this purpose the judgment of the district court will be reversed, and the cause remanded.

All the Justices concurring.