THE COMMON COUNCIL OF THE VILLAGE OF CEDAR SPRINGS v. BARTHOLOMEW SCHLICH AND THE TOLEDO, SAGINAW & MUSKEGON RAILROAD COMPANY.

*Municipal corporations—Bonds to aid in the construction of railroad—Good-faith holder—Equity.*

1. Courts of equity are designed to afford relief to those who have acted conscientiously, in good faith, and with an honest purpose, and where, under the circumstances, they have not an adequate remedy at law; but they will not assist parties in taking advantage of their own deliberate wrong and willful misconduct.

So *held*, where the common council of a village, on the petition of some of the inhabitants, and in order to *evade* the constitutional objections to the issuance of municipal bonds in aid of railroads, secured the passage of a special act of the Legislature authorizing the common council to borrow money, and issue village bonds as security, upon a majority vote of the electors, the money to be used in making public improvements in the village. The vote was taken, and the bonds issued and sold, and passed into the hands of an alleged *bona fide* holder. They recited that they were issued pursuant to,

and for the purpose named in, the act, but were *in fact* intended to be, and were, used to secure the construction of a railroad through the village. The common council filed a bill praying that the bonds be declared void, and their negotiation enjoined, making the railroad company and holder defendants. And it is held that the court will leave the parties in the bed they have made, and to such defense as a court of law may find they are entitled to.

2. And it is further held that, if the purchaser is a *bona fide holder* of the bonds, the village is bound to pay them, and that this is the only question that can be involved in a suit brought for their collection, as they are void in the hands of those who knew the history of the transaction, and the purpose for which they were issued.

Appeal from Kent. (Burch, J.) Argued May 2, 1890. Decided June 13, 1890.

Bill to declare municipal bonds issued for railroad purposes null and void, and to enjoin their negotiation. Defendant Schlich appeals. Decree reversed, and bill dismissed. The facts are stated in the opinion.

*Smith & Stevens,* for complainant, contended:

1. The validity of municipal bonds depends upon acts of the common council of the municipality, which are manifested and preserved by public records, open to the inspection of all interested persons; citing *Lippincott v. Pana,* 92 Ill. 24; *People v. Cornell,* 47 Barb. 329; *State v. Williams,* 41 N. J. Law, 332; *Hawes v. White,* 66 Me. 305; *State v. Meadows,* 1 Kan. 90.

2. It is because of the existence of records that the following cases have held that a purchaser at a tax sale comes strictly within the rule *caveat emptor*: *People v. Auditor General,* 30 Mich. 12; *Jenks v. Wright,* 61 Penn. St. 410.

3. The recital in the bonds that they were issued for public improvements was one relating to the power to issue, and does not estop the municipality from denying its truth; citing *Bank v. Trustees,* 110 U. S. 608; *Hayes v. Holly Springs,* 114 Id. 120; *Lake Co. v. Graham,* 130 Id. 674; Big. Estop. (4th ed.) 530; *Supervisors v. People,* 25 Ill. 182; *Force v. Batavia,* 61 Id. 100; *Williams v. Roberts,* 88 Id. 13; *Lippincott v. Pana,* 92 Id. 24; *Sykes v. Columbus,* 55 Miss. 115; *Williamson v. Keokuk,*

44 Iowa, 88; *McPherson v. Foster*, 43 Id. 48; *Boyce v. Church*, 46 Md. 359.

4. In the recent case of *Ottawa v. Carey*, 108 U. S. 123, the Court said: "In all the vast number of cases involving such [railroad aid] subscriptions and donations that have come before this Court for adjudication since *Com'rs of Knox Co. v. Aspinwall*, 21 How. 539, it has never been supposed that the power to govern of itself implied power to make such subscriptions or such donations. On the contrary, it has been over and over again held   *   *   *   that, unless the *specific* power was granted, all such subscriptions and all such donations, as well as the corporate bonds issued for their payment, were absolutely void, even as against *bona fide* holders of the bonds;" citing *Thomson v. Lee Co.*, 3 Wall. 327; *Marsh v. Fulton Co.*, 10 Id. 676; *St. Joseph v. Rogers*, 16 Id. 644; *McClure v. Oxford*, 94 U. S. 429; *Wells v. Supervisors*, 102 Id. 625; *Allen v. Louisiana*, 103 Id. 80.

5. The bonds in question were given for railroad aid. Where is the "specific power" given to the municipality to issue them? The purchasers were bound to ascertain that they were negotiated by and under the direction of the common council, and if they had done so they would have learned that they were not issued for a lawful purpose.

6. In general, a municipal corporation is not estopped from denying the validity of a contract made by its officers without authority. The doctrine of *ultra vires* is applied with greater strictness to municipal bodies than to private corporations; citing *Newbery v. Fox*, 37 Minn. 141; *Bogart v. Township of Lamotte*, 79 Mich. 294.

7. The point is raised that complainant is not entitled to relief in equity because it does not come with clean hands. In his answer defendant relied *entirely* on a claim of *bona fide* holding, and he cannot raise the objection of a want of equity in the bill for the first time at the hearing; citing Put. Mich. Ch. Pl. & Pr. 123, and cases cited, *Williams v. Detroit*, 2 Mich. 562.

8. But the objection is not a good one. The illegal acts set up in the bill were committed by one common council. At the next charter election a new council was elected, who repudiated such illegal acts, refused payment of the interest upon the bonds, and directed the commencement of this suit. This step is taken while the bonds are in the hands of one who, as alleged, had knowledge of the illegality of their issue when he purchased them, and by the aid of an injunction their passage to other hands is prevented. Having accomplished

this, complainant, in the same suit, asks that the whole matter be disposed of, under the principle that when equity once acquires jurisdiction of a matter for any purpose it will settle it in all its features; citing *McPherson v. Foster*, 43 Iowa, 48; *Lippincott v. Pana*, 92 Ill. 24.

*Smiley & Earle*, for appellant, contended:

1. The recitals in the bonds are conclusive against the village while they are in the hands of a *bona fide* purchaser; citing *Walnut v. Wade*, 103 U. S. 683; 1 Dill. Mun. Corp. § 512; 2 Dan. Neg. Inst. § 1537.

2. The improper use of the bonds by a village officer cannot defeat the title of a *bona fide* purchaser; citing *Brooklyn v. Ins. Co.*, 99 U. S. 362, 370; *East Lincoln v. Davenport* 94 Id. 801.

3. As to what constitutes a *bona fide* purchaser, counsel cited *Davis v. Seeley*, 71 Mich. 209; *Bank v. McClelland*, 9 Col. 608; *Bank v. Young*, 41 N. J. Eq. 531.

4. Spitzer & Co. were *bona fide* purchasers, and defendant succeeded to their rights; citing *Kost v. Bender*, 25 Mich. 516; *Cromwell v. Sac Co.*, 96 U. S. 51.

5. Complainant does not come with clean hands, and the court will dismiss the bill, and leave the parties to their remedy at law; citing 1 Pom. Eq. Jur. §§ 397, 492; *Jackson v. Detroit*, 10 Mich. 248.

GRANT, J. On February 18, 1887, a petition was presented by some of the inhabitants of the village of Cedar Springs to the common council, requesting it to take action to obtain from the Legislature a special act enabling the village to issue special improvement bonds in the sum of $5,000, the proceeds thereof to be used in inducing the railroad company to construct its road through the village. The prayer of the petition was granted. The council appointed an agent to proceed to Lansing for the purpose of procuring such action from the Legislature; and on February 22 the act (No. 357, Local Acts of 1887) in question was passed, entitled—

"An act to authorize the village of Cedar Springs, in the county of Kent, to borrow money to make public improvements in said village."

The bill was introduced in the Legislature and passed

both Houses on the same day. The act authorized the common council to borrow the money, and issue bonds therefor, upon a vote of the majority of the qualified electors of said village, and provided that the money arising therefrom should be expended in making public improvements within said village.

Pursuant to the provisions of this act, the common council, on March 4, made due provision for submitting the question to the electors at the coming charter election in March. The vote stood 189 for and 6 against the issue of the bonds. On March 19 the council adopted a resolution reciting the act of the Legislature, the vote of the electors, and providing for the issue of the bonds, to be deposited with the treasurer to await the further orders of the council. Thereupon five bonds of $1,000 each were issued, and recited that they were issued in pursuance of the above act of the Legislature and of a vote of the electors, and for the purpose of public improvements in said village. On April 1 the common council adopted the following resolution:

"Whereas, the Toledo, Saginaw & Muskegon Railroad Company propose running their road from Greenville to Muskegon, and should they do so, and make Cedar Springs a station on said road, it is the judgment of this council that it would be a public benefit and improvement to the village of Cedar Springs:

"Therefore, be it resolved by the common council of the village of Cedar Springs that the bonds of said village, lately issued thereby, and numbered from one to five, inclusive, for the sum of $1,000 each, be disposed of, the proceeds of which shall be expended in ditching the land along the side of said road-bed, and in making the road-bed through said village of Cedar Springs, and in making a suitable depot therein, and in fixing the water-course on the Oldfield and Nickerson land, should the road run there; that said bonds be deposited with E. Middleton, of Greenville, Michigan, to be delivered to David Robinson, Jr., president of the said railroad company, for the purposes aforesaid, upon said Robinson

depositing with said Middleton first mortgage bonds of said railroad company, on said railroad, for the sum of $5,000, and the note of said company for the sum of $5,-000, as security that the proceeds of said bonds shall be expended as aforesaid, and said railroad be completed and ready for cars on or before January 1, 1888, from Greenville to Muskegon, Michigan, or the bonds or proceeds returned to the village. of Cedar Springs within said time; and the treasurer of the village of Cedar Springs is hereby instructed to forthwith deposit said bonds with E. Middleton as herein directed."

These bonds were negotiated in Toledo, and were purchased by Spitzer & Co., of that city, about September 12, 1887, for the sum of $4,000. Prior to this purchase, there were submitted to Spitzer & Co. the following documents, duly certified:

1. A statement from the president of the village, dated April 9, 1887, made for the purpose of selling the bonds, and giving the number of inhabitants, the assessed valuation .of the village, the amount of money then in the treasury, and stating that the village had no indebtedness except that represented by these bonds.

2. The resolution of submission to the vote of the electors.

3. The election notice, and the result of the election.

4. The resolution of the common council of March 19, above stated.

5. A certified copy of the act of the Legislature.

The resolution of April 1, above given in full, was not submitted to Spitzer & Co. Subsequently, and about January 11, 1888, Spitzer & Co. sold these bonds, through Mr. Verdier, cashier of the Kent County Savings Bank, Grand Rapids, Mich., to defendant Schlich, for $4,635.36.

On June 1, 1888, the common council passed a resolution refusing to pay the interest which had matured upon these bonds, and on July 7, 1888, filed the bill in this cause, praying that these bonds might be declared null and void, and for an injunction to prevent the defendant from negotiating the same. The defendant

Schlich answered under oath, claiming to be a *bona fide* purchaser for value without notice.

Courts of equity are designed to afford relief to those who have acted conscientiously, in good faith, and with an honest purpose, and where, under the circumstances, they have not an adequate remedy at law. These courts cannot be successfully invoked to assist parties in taking advantage of their own deliberate wrong and willful misconduct.

The complainant, the citizens of the village of Cedar Springs, and the defendant railroad company entered into the discreditable scheme of attempting to defeat the plain provisions of the Constitution as interpreted by the courts. They all endeavored to accomplish illegally, but under the forms of law, that which they knew could not be accomplished legally. They all knew that they had no power to create this debt without an act of the Legislature, and that such an act, if passed, would be absolutely void if the real object to be accomplished was expressed in the title and body of the act. They therefore falsely represented to the Legislature that they desired the power to raise $5,000 by bonds for the purpose of public improvements. As if fearing an investigation, and to prevent objection on the part of any citizen, the complainant sent an agent, who hurried the bill through the Legislature in one day. We have not before us the case of a tax-payer who opposed the accomplishment of so gross a wrong, and is therefore entitled to ask relief from the burden imposed, but we have one of the very parties who promoted and actively assisted in the transaction asking relief in a court of equity from its own gross and willful misconduct. The maxim, "He that hath committed iniquity shall not have equity," applies with singular force to the conduct of the complainant in this case. A court of equity will leave this

complainant, the people of the village, and the defendant railroad company in the bed they have deliberately made, and to such defense as a court of law may find they are entitled to.

If the defendant Schlich was a *bona fide* purchaser without notice of the real object for which these bonds were issued, the village is bound to pay them. This is the only question that can be involved in a suit brought to recover upon these bonds; for they would be void in the hands of those who knew the history of the transaction, and the purpose for which they were issued. It was evidently the design of the village authorities and of their agents, and of the officials of the railroad company, to keep the real facts from those to whom they desired to sell the bonds. They must have known that the bonds could not be negotiated if the truth were known. This fact whether or not Schlich is a *bona fide* purchaser should be determined in a court of law.

If the result of denying relief to the complainant should be that these bonds may be transferred by the defendant Schlich to some other person who may be a *bona fide* holder, it is only a result of the complainant's own wrongdoing, and it is entitled to no relief in this Court.

The decree of the court below must be reversed, with the costs of both courts, and a decree entered here dismissing the bill.

The other Justices concurred.