THOMPSON *v.* VILLAGE OF MECOSTA.

1. MUNICIPAL CORPORATIONS—BONDS—DESIGNATION OF OBLIGOR.

A bond entitled "Public Improvement Bond of the Village of M." recited that it was issued under authority of an act authorizing the village trustees to levy and collect a tax for public improvements, and to issue bonds therefor. By it the "board of trustees of the village" promised to pay. It was signed by the president and clerk of the village, and sealed with the village seal. *Held*, that it was the bond of the village, and not that of the trustees.

2. SAME—DELIVERY—FINDINGS OF COURT.

Where the findings of the trial court recite the records of a village, stating that a village bond payable to bearer was "given to" a certain person, speak of the bond as "issued" by the village, and state that the bond "came into the hands" of such person, the findings sufficiently show the fact of delivery.

3. TRIAL—WRITTEN INSTRUMENTS—DENIAL OF EXECUTION—SUFFICIENCY OF AFFIDAVIT.

An affidavit denying the execution and delivery of an instrument sued on, filed with the plea, though not properly entitled, is sufficient to put plaintiff to proof of the execution and delivery.

4. MUNICIPAL CORPORATIONS—BONDS—DELIVERY—EVIDENCE.

Where a village council obtained special legislation authorizing the issue of certain bonds, employed lawyers to advise in the matter, and submitted the question to a vote, and the records show that they determined "to issue bonds," and that they authorized the president of the village to negotiate the loan and sign the bonds, and also show their approval of action by which the bonds, which were payable to bearer, were "given" to a certain person, and thereafter the council made payments thereon, a finding that the bonds were delivered by authority of the council is justified.

5. SAME—BONA FIDE PURCHASER.

Where a village which is authorized by special act to issue bonds for public improvements issues its bonds, reciting that they are issued under such act and for such purpose, a *bona fide* purchaser for value has a right to rely on such statements,

and may recover thereon, though the bonds were actually issued for a private improvement, and were therefore void in the hands of the original holder.

6. SAME—BURDEN OF PROOF.

Where, in an action on a municipal bond, it appears that the bond was void in the hands of the original holder, plaintiff has the burden of proving that he or some former owner of the bond was a *bona fide* purchaser.

7. SAME—CONSIDERATION — DISCHARGE OF PRECEDENT DEBT— EXTENSION OF TIME.

The discharge of a pre-existing indebtedness, in whole or in part, or an extension of time for its payment, is such a consideration for the transfer of negotiable paper (*e. g.*, a municipal bond) as to constitute the transferee a purchaser for value; and the relinquishment of the debt is none the less sufficient in this respect because the debtor remains contingently liable as indorser of the paper transferred.

8. SAME—BANKS—BONA FIDE PURCHASER—EVIDENCE.

Evidence that a bank purchased a municipal bond, fair on its face, in the usual course of business, is not of itself sufficient to show that it took without notice of facts rendering the bond void in the hands of the original holder, and is therefore entitled to protection as a *bona fide* purchaser.

Error to Jackson; Smith (Clement), J., presiding. Submitted April 16, 1901.   Decided July 10, 1901.

Debt by Anna Maria Thompson and William M. Thompson, trustees, etc., against the village of Mecosta, upon a municipal bond. From a judgment for plaintiffs, defendant brings error.   Reversed.

*Watts, Smith & Baldwin*, for appellant.

*Eugene Pringle* and *M. Brown*, for appellees.

HOOKER, J.   The plaintiffs' action is upon the following bond:

"No. 2.                                              $1,000.00.

"STATE OF MICHIGAN.—PUBLIC IMPROVEMENT BOND OF
        THE VILLAGE OF MECOSTA, MICHIGAN.

"Know all men by these presents, that the board of trustees of the village of Mecosta, in the county of Mecosta and State of Michigan, acknowledges itself indebted to the bearer hereof in the sum of $1,000, for value received, which said sum the said board of trustees of said village of Mecosta promises and agrees to pay to the bearer hereof at the Jackson City Bank, in the city of Jackson, Mich., two years from date, with interest thereon at the rate of seven per cent. per annum, payable annually, upon presentation of this bond.

"This bond is one of a series of two bonds, of $1,000 each, amounting in the aggregate to $2,000, issued by the board of trustees of the village of Mecosta, of Mecosta county, and State of Michigan, for the public improvements of said village, under authority of an act of the legislature of the State of Michigan approved May 11th, 1893, and entitled 'An act to authorize the board of trustees or common council of the village of Mecosta, Mecosta county, to levy and collect on the taxable property of said village, in addition to other taxes now authorized by law, a tax for public improvement of said village, and to issue bonds therefor' [Local Acts 1893, No. 382], and is authorized by a vote of two-thirds of the electors of said village voting at an election duly held in pursuance of the provisions of said act.

"In testimony whereof, the said board of trustees of said village of Mecosta have caused this bond to be signed by the president and clerk of said village, and sealed with the seal thereof, at the village of Mecosta, at the county of Mecosta, this 23d day of September, A. D. 1893.

    [Signed]  "A. R. STREETER, President.
        "E. O. WATKINS, Clerk."

At the left-hand lower corner, practically over a circle in ink, appear these words: "Seal, Village of Mecosta, Michigan,"—the word "Seal" being in the center. On the back of the bond is an indorsement as follows: "John Hutchinson Manufacturing Company, W. A. Reynolds, Secretary." Also on said bond a further indorsement as follows:

"We hereby waive demand, notice of nonpayment, and protest.
"Jackson, Sept. 23, 1893.
    [Signed]  "JOHN HUTCHINSON
        MANUFACTURING COMPANY,
       "W. A. REYNOLDS, Secretary."

Also on said bond the following indorsement:

"$70.52.            MECOSTA, MICH., Nov. 1, 1894.
"Received of the village of Mecosta $70.52, in full for first year's interest on within bond.
                [Signed]    "JACKSON CITY BANK, Principal.
                            "D. A. FERGUSON, Attorney."

The defendant filed an affidavit, made by the president of the village on its behalf, stating that "said village never executed or delivered the bond * * * to any person," and that it was not executed in the name of said village, and was not authorized to be executed or delivered by said village to any person. The cause was tried without a jury, findings being filed, and a judgment was rendered for the plaintiffs, and defendant has taken a writ of error.

The finding shows that this and another similar bond were executed by defendant and delivered to the Hutchinson Manufacturing Company of Jackson, Mich., as a bonus or aid to parties erecting a gristmill; and in the hands of the Hutchinson Company they were admittedly void, because not issued for a lawful purpose. The first section of the act provides that "the board of trustees * * * shall be, and are hereby, authorized and empowered to borrow money on the faith and credit of said village, and issue bonds therefor, to an amount not exceeding six thousand dollars, which shall be expended in making public improvements in said village."

The principal points made against the judgment are:

1. That the bond does not on its face purport to pledge the credit of the village, but only that of the board of trustees.
2. That there is no proof that the delivery of the bond was ever authorized or made.
3. That the bond was void, even in the hands of a *bona fide* holder, because issued for an illegal purpose and without authority of law.
4. There is no proof that plaintiffs are *bona fide* holders.

Does the bond purport to pledge the credit of the village? While counsel raise this point by claiming that the bond

does not pledge the credit of the village, they do not discuss it. We infer that their claim is that it is the trustees who promise to pay, instead of the village. We think the bond does not leave the intention in doubt; its reference to the act under which it purports to have been issued clearly showing that it was to be paid from the public funds, to be raised by tax upon the taxable property in the village. *Atchison Board of Education* v. *De Kay*, 148 U. S. 591 (13 Sup. Ct. 706); 4 Am. & Eng. Enc. Law (2d Ed.), 624, and note.

Was the bond delivered to the Hutchinson Manufacturing Company? Counsel for the defendant say that the court's finding fails to show that the bond was delivered. The tenth finding states that:

"It was also moved, supported, and carried at the same meeting 'that the president and clerk be instructed to sign bonds for $2,000 for public improvements.' Following the motion to adjourn this meeting is the following, which seems to be a part of the proceedings of the meeting:

"'Bond No. 2, for public improvements of the village of Mecosta, Mich., given to John Hutchinson Manufacturing Company of Jackson, Mich., for one thousand dollars, interest at seven per cent. per annum, payable two years from date at the Jackson City Bank Jackson, Mich.

"'Dated Sept. 23, 1893.

[Signed]   "'A. R. STREETER, President.
          "'E. O. WATKINS, Clerk.'

"At this meeting there were present A. R. Streeter, president, and Trustees Thomas, Alvord, Wilcox, and Gale."

The eleventh finding states that:

"On September 25, 1893, the next meeting after September 23, 1893 (the same being a regular meeting), there were present A. R. Streeter, president, and Trustees Wilcox, Thomas, and Alvord, and the following among other things is shown by the record of the same: 'Minutes of the last meeting read and approved.'"

The twelfth finding speaks of "the bond issued by the defendant," and contains a copy of it. The thirteenth

finding says that this bond and bond 1 came together into the hands of the John Hutchinson Manufacturing Company. We are of the opinion that this is a sufficient finding of the fact of delivery. Whether there is evidence justifying such a finding is another question.

It seems to be conceded that but for the affidavit denying the execution and delivery of this bond, which was filed with the plea, the possession of the bond by the Hutchinson Manufacturing Company would be *prima facie* evidence of its execution and delivery. It is said that the affidavit is not entitled in the case; but we think it should be treated as sufficient to comply with the rule ( Cir. Ct. Rule No. 8 ), which provides, in substance, that, "upon the plea of the general issue in an action upon any written instrument, * * * the plaintiff shall not be put to the proof of the execution of the instrument, or the handwriting of the defendant," unless an affidavit is filed, etc., " denying the same," etc.

The intention of the board to make and issue these bonds is clear. There is proof that they obtained special legislation to enable them to accomplish it, and employed lawyers to advise in the matter. They submitted the matter to a vote. Their record shows a determination "to issue bonds." They authorized the president to negotiate a loan and to sign the bonds. Their record contains the statement that they were given to the Hutchinson Manufacturing Company, and this appears over the signature of the president and clerk, in connection with a meeting at which there was a quorum present, and the minutes were read and approved at the next regular meeting. Furthermore, they afterwards paid about $800 upon the bonds. There was no evidence disputing any of these facts, and we think they show *prima facie* a delivery, and that the same was authorized by the board.

Was the bond void in the hands of a *bona fide* holder? This bond purports to have been issued under authority of a law which it mentions, and for the purpose prescribed by the act,—a thing that the village might lawfully do.

As a matter of fact, it was not issued for such a purpose, but for a private improvement, and upon its face it unquestionably carried a false pretense; but a *bona fide* purchaser for value had a right to rely upon the statement of the board, appearing in the bond, that it was issued to borrow money under this act, for lawful purposes; *i. e.*, public improvements. *Common Council of Cedar Springs* v. *Schlich*, 81 Mich. 405 (45 N. W. 994); *Gibbs* v. *School District*, 88 Mich. 334 (50 N. W. 294, 26 Am. St. Rep. 295); *Waite* v. *City of Santa Cruz*, 89 Fed. 619; *Village of Kent* v. *Dana*, 40 C. C. A. 281, 100 Fed. 56; *Risley* v. *Village of Howell*, 12 C. C. A. 218, 64 Fed. 453; *City of Cadillac* v. *Savings Institution*, 7 C. C. A. 574, 58 Fed. 935; *National Life Ins. Co.* v. *Board of Education*, 10 C. C. A. 637, 62 Fed. 778; *Hackett* v. *City of Ottawa*, 99 U. S. 86; *Coler* v. *Dwight School Township*, 3 N. Dak. 249 (55 N. W. 587, 28 L. R. A. 649); *New York Life Ins. Co.* v. *Board of Com'rs*, 45 C. C. A. 233, 106 Fed. 123.

Was there proof that the Jackson bank or the plaintiffs were *bona fide* purchasers? There is no doubt that the burden of proof is upon the plaintiffs to show a *bona fide* purchase for value. *French* v. *Paving Co.*, 100 Mich. 443 (59 N. W. 166); *Township of Grant* v. *Township of Reno*, 114 Mich. 41 (72 N. W. 18); *Stevens* v. *McLachlan*, 120 Mich. 285 (79 N. W. 627); *Drovers' Nat. Bank* v. *Potvin*, 116 Mich. 474 (74 N. W. 724). The evidence shows that the bank took the bond in part payment of a 30-day promissory note given by the Hutchinson Manufacturing Company. The discharge or extension of a pre-existing debt is a valuable consideration. *Railroad Co.* v. *National Bank*, 102 U. S. 14; *Bostwick* v. *Dodge*, 1 Doug. 413; *Outhwite* v. *Porter*, 13 Mich. 533, and note. In *Schloss* v. *Feltus*, 103 Mich. 526, 533 (61 N. W. 797), this was recognized to be the rule in cases of negotiable paper. These cases are a sufficient answer to the claim that, inasmuch as the Hutchinson Manufacturing Company indorsed the bond, it was a mere change of the form, and

not an extinguishment, of its debt to the bank. Even if it were so, there was an extension of time, which would be a valuable consideration. See *Smith* v. *Rawson*, 61 Ga. 210; *Cone* v. *Baldwin*, 12 Pick. 545.

It was incumbent upon the plaintiffs to show that the bond was purchased without notice of its infirmities, and counsel for defendant claim that the proof does not show it. The evidence is said to show that it was taken in the course of business at the bank. This testimony is based upon the books of the bank, rather than the recollection of the transaction. It does not appear that the employé of the bank who took the bond from the Hutchinson Manufacturing Company is known. Certainly it is not clear that he was produced as a witness. The burden being on the plaintiffs, the presumption is that it bought with notice. Unless the fact that the bond was taken in the course of the bank's business raises a presumption that it was taken without notice, the plaintiffs have failed to offer any proof of a want of notice. Counsel for plaintiffs contend that such presumption arises, and, if it does, we cannot question the finding of the circuit judge. Newkirk, the president of the bank, gave the only testimony upon the subject. He did not say that the transaction was within his personal knowledge or recollection. The only showing that it was purchased in the course of business is the fact that the bookkeeping of the bank shows that it was purchased and applied on the Hutchinson Manufacturing Company's note; but the showing made is as consistent with notice as with a want of it. Why should it, then, be assumed that there was no notice, when the evidence of what the transaction really was is peculiarly within the control of the bank, and the burden of proving the negative is imposed upon the plaintiffs? Want of notice is a substantive fact to be proved, and a want of evidence upon the subject does not prove such fact. Counsel say that "the only difference between the case of *Drovers' Nat. Bank* v. *Potvin, supra,* and this case is that in that case the cashier testified to the conclusion that

the bank had no notice, while here the ex-cashier swore to the exact facts." The trouble is that the ex-cashier has not testified about the transaction, and apparently knows nothing about it. We think the plaintiffs failed to show that the bank was a *bona fide* purchaser. See *John Hancock Mut. Life Ins. Co.* v. *City of Huron*, 80 Fed. 652. There is no testimony tending to show whether the plaintiffs were *bona fide* purchasers or not. *Tilden* v. *Barnard*, 43 Mich. 376 (5 N. W. 420, 38 Am. Rep. 197).

The judgment is reversed, and a new trial ordered. •

Moore, Long, and Grant, JJ., concurred. Montgomery, C. J., did not sit.