THOMPSON *v.* VILLAGE OF MECOSTA.

1. APPEAL AND ERROR—LAW OF CASE.
     A determination on review that the testimony of a certain
     witness was not sufficient to overcome the presumption of
     notice to a bank of the defects in municipal bonds of which
     it claims to be a bona fide purchaser, is binding on the court
     on a subsequent review of the same case, the testimony being
     the same.

2. MUNICIPAL CORPORATIONS—BONDS—BONA FIDE HOLDERS—EVI-
   DENCE.
     Testimony by the donee of a municipal bond, unenforceable
     except in the hands of a bona fide purchaser, because given
     as a bonus, that he sold it to the manager of a bank, to whom
     he did not impart his knowledge concerning the character of
     the bonds, is sufficient to take the question of the good faith
     of the bank to the jury.

3. WITNESSES—IMPEACHMENT—CONTRADICTORY STATEMENTS.
     Evidence that the donee of municipal bonds, unenforceable
     except in the hands of a bona fide holder, had stated to coun-
     cilmen that he could dispose of them to a certain bank and
     wanted them made payable at that bank to indemnify it
     against a bond signed by one of its directors, guaranteeing his
     performance of the contract for which the bonds were issued,
     none of the officers or agents of the bank being present at the
     conversation, had no tendency to contradict his testimony
     that he did not impart to the bank his knowledge of the char-
     acter of the bonds, and was therefore not competent to im-
     peach him on that theory.

4. SAME.
     The donee of municipal bonds, unenforceable except in the
     hands of a bona fide holder, having testified that he sold
     them to the manager of a bank, to whom he did not impart his
     knowledge of their character, testimony that, long after the
     sale, a third person, who was not sworn, stated, in the donee's
     presence, that the sale to the bank was a mere pretense, which
     statement the donee did not deny, is inadmissible for the pur-
     pose of impeachment, the donee being under no duty to
     deny it.

5. EVIDENCE—ADMISSIONS—PRIOR OWNER.

Admissions of the president of a corporation receiving munic. ipal bonds as a bonus cannot impair the right of the assignee of a bona fide holder to recover on them.

6. BANKS AND BANKING—NOTICE TO OFFICERS.

That a director of a bank, which is claimed to have been a bona fide holder of municipal bonds issued as a bonus, was surety on a bond given by the donee to secure performance on his part, is no evidence that the bank had knowledge of the character of the bonds, where there is no evidence that the director knew at the time that the village authorities had anything to do with the transaction, or that he was acting for the bank in signing the bond.

7. EVIDENCE—ADMISSIONS—TRUSTEES.

The declarations of one suing as the trustee of an estate are not admissible as the declarations of a party, since the estate is not bound by them.

8. WITNESSES—IMPEACHMENT—DECLARATIONS.

Declarations of one suing as trustee, inconsistent with his testimony, on a proper foundation being laid, are admissible to impeach him.

9. MUNICIPAL CORPORATIONS—BONDS—BONA FIDE PURCHASER— INQUIRY .

The test of whether the officers of a bank, at the time of its purchasing municipal bonds, had notice of facts and circumstances requiring inquiry, is not whether they were such as would naturally or reasonably lead an ordinarily careful and prudent man to make inquiry as to what the bonds were given for, but whether they were such as to make it bad faith not to do so.

10. BANKS AND BANKING—NOTICE TO OFFICERS.

That the president or cashier of a bank which purchased municipal bonds had notice or knowledge of facts which would reasonably lead an ordinarily careful man to make inquiry as to what the bonds were given for, is not notice to the bank where the purchase was not made by the one of them having notice, but by the other, having no such notice or knowledge.

MOORE, C. J., dissenting.

Error to Lenawee; Chester, J. Submitted January 10, 1905. (Docket No. 39.) Decided September 19, 1905.

Debt by Anna Maria Thompson and William M. Thomp-

son, trustees, etc., against the village of Mecosta, upon a municipal bond.    There was judgment for defendant, and plaintiffs bring error.    Reversed.

*Eugene Pringle* and *M. Brown*, for appellants.

*Watts, Smith & Baldwin* and *Fellows & Chandler*, for appellee.

HOOKER, J.    This action, brought to recover upon a municipal bond issued by the village of Mecosta, has been before us on a former occasion.    See 127 Mich. 522.    The bond was admittedly irregular, and in order that plaintiffs recover it is necessary that they show that the Jackson City Bank, from which they purchased it, was a bona fide purchaser of the bond for value.    Id.    The evidence offered to prove such purchase consisted of the testimony of Hutchison and a transcript of that of Newkirk, a former cashier of the bank, now dead, taken upon the former trial.    We held in our former opinion that Newkirk's testimony was consistent with a want of bona fides, and therefore was not sufficient to overcome the presumption of notice.    The same is necessarily true upon the present record.    Hutchison testified that he, as owner of the bond, sold it to Emerson, who was manager of the bank and acting on its behalf in the transaction, and that he did not impart his knowledge concerning the character of the bonds.    There was enough in this testimony to take the question of good faith to the jury, and, as the defendant was able to give no testimony regarding the transaction, it was prima facie evidence of a bona fide purchase, unless discredited either by such an impeachment of Hutchison as justified the jury in disbelieving his testimony, thereby leaving the case to rest upon the legal presumption of notice, or by testimony of facts and circumstances inconsistent with and outweighing his testimony.

The bond was payable at the bank in Jackson.    Counsel offered testimony tending to show that the persons who constituted the village council required a bond for the

faithful performance of the contract to build the mill, and that such a bond was furnished, signed by William M. Thompson, who was a director of the bank. One of these councilmen, Streeter, was allowed to testify that at the time the negotiations were pending Hutchison said that, if he could get these bonds, he could turn them over to the Jackson City Bank, and that it would sign a bond of indemnity for $10,000, guaranteeing the performance of the contract, and that such a bond was afterwards presented to them—i. e., the bond signed by William M. Thompson—and that Hutchison said Thompson was a representative of the bank; also that Hutchison said he had the bonds payable at the bank to indemnify it against signing the indemnity bond, or so that he could use the funds through the bank. All of this related to conversation between Hutchison and the defendants, in the absence of the bank and its representatives, before the contract was made or the bond was issued. It was hearsay testimony, and it is not claimed that it was admissible, except by way of impeachment, to contradict Hutchison.

A Mr. Wilson was asked if Reynolds had not said in the presence of Hutchison that he understood that the bonds were void, of no value, but that they took them in their business and took their chances, and that they had gone through the form of putting this one into the hands of a bona fide or good faith holder. The testimony was admitted, although Reynolds was not a witness in the case. It is not disputed that the testimony is hearsay, but it is claimed to have been admissible to impeach Hutchison, who was a witness. The alleged conversation was long after the bank acquired the bond.

The conversation with Streeter regarding Hutchison's intentions was not inconsistent with a bona fide purchase by the bank; neither was the fact that he presented a bond of indemnity, signed by the bank or its officer, nor the reason that Hutchison had for having the bond made payable at the bank. They constituted no testimony affecting the bank's purchase, and the testimony, if given

by Hutchison, would have been immaterial. It was, therefore, not a proper subject for impeachment. Nor was the testimony inconsistent with his original statement that the bank bought in good faith and for value.

The testimony of Wilson had no possible connection with Hutchison's testimony. This testimony is said to be impeaching in its character, upon the theory that the statement of Reynolds was made in Hutchison's presence, who, by his failure to deny it, may be said to have acquiesced in and adopted it, and tended to lessen the weight of his testimony that the sale to the bank was a bona fide one. The importance of this evidence is manifest when we consider that upon this record the burden of proving a bona fide purchase by the bank was upon the plaintiff. The only testimony tending to prove it was Hutchison's. By impeaching Hutchison, the jury might be justified in disregarding his testimony, which would leave the claim of bona fide purchase unsupported.

It would have been competent to prove by Reynolds the fact that the sale was a fake, to give the appearance merely of a bona fide sale. Defendant did not attempt that, but sought to accomplish the same purpose in another way; i. e., by discrediting Hutchison. This was competent, and, if it had been shown that Hutchison had made this statement ascribed to Reynolds, it would have been proper. So if it had appeared that Hutchison had adopted the statement, or said that it was true, the same would have been the effect. *State* v. *McGaffin*, 36 Kan. 320; *Patterson* v. *State* (Tex. Cr. App.), 60 S. W. 557. This is an attempt to extend the rule a step further and make the mere silence of the witness equivalent to his affirmative assertion of the truth of the statement. This is by analogy to the rule that treats acquiescence or silence of a party to an action as an admission, when he is in duty bound to speak or it is unnatural that he should not speak. The primitive rule in impeachment was that, when one has made a contradictory *statement*, it is a contradiction of his testimony which tends to discredit him,

but that it cannot be used as substantive proof of the fact stated. That there is great danger of such use by juries has been said by courts many times, and it is a tradition of the law that impeachment is not favored, but must be in strict accordance with the rule. There may be a few modern text-books and digests in which the rule that silence may answer the purpose of an impeachment is stated. Thus in 30 Am. & Eng. Enc. Law (2d Ed.), p. 1113, it is said:

"Verbal statements or writings of persons other than the witness sought to be discredited, for which the witness is not responsible and which have not been approved by him, are inadmissible in evidence to contradict his testimony. But a statement made by another in the presence of a witness, assented to and adopted by him, or *heard by him without objection or contradiction*, may be proved where the statement contradicts his testimony in a material respect and the witness denies that the statement was made."

The portion of the text italicised is hardly supported by the cases cited. Thus in *State* v. *McGaffin*, supra, the statements were assented to when made, and the same is true in *Patterson* v. *State*, supra. The case of *Easterwood* v. *State*, 34 Tex. Cr. R. 402, seems not to be in point, thus leaving the assertion of the text without support. It may have been inserted out of abundant caution, and illustrates how easily a trend may be given to the law by inaccuracies in text-books and digests.

Mr. Wigmore, in his work on Evidence, evinces his belief in the force of the analogy mentioned, and says that—

"A failure to assert a fact when it would have been natural to assert it amounts in effect to an assertion of the nonexistence of the fact. This is conceded as a general principle of evidence (post, § 1071)." 2 Wigmore on Evidence, § 1042.

We concede that a witness' testimony may be discredited in many instances by his failure to state all that he has previously stated, or by stating more than on previous occasions, where there had been a duty to speak, as shown

by the various cases cited by the author; but the facts in this case show no such duty, even if it could be said that a denial of Reynolds' alleged statement to Wilson would have been natural. Without affirming or denying that there are instances where proof of silence might be used to impeach a witness, we are of the opinion that this is not such a case. We have neither been cited to nor found a parallel case, where defendant's position has been sustained. And see 2 Bouv. Law Dict. p. 1245; *Goldsby* v. *U. S.*, 160 U. S. 70. All of this testimony was likely to lead the jury to a wrong conclusion.

The court refused to instruct the jury that admissions of John Hutchison could not impair plaintiff's right to collect the bond. The request should have been given. He also refused to charge that the fact that William M. Thompson signed a bond of the Hutchison Manufacturing Company to secure a contract to build a mill is no evidence that the bank had notice or knowledge that the bond was invalid. This request also should have been given, as there is no testimony tending to show that at that time Thompson knew that the village authorities had anything to do with the transaction, or that he was acting for the bank in signing the bond.

Testimony was given as to statements made by Thompson at the time of the trial of this case, when the witness Wilson asked for further time upon the bond, in which conversation he said that he was president of the bank and was quite indifferent as to whether the village paid the bond or not, and that "we are amply secured here in Jackson by the Hutchison Company for this bond, and any arrangement you can make with the Hutchison Company is agreeable to us." The witness added:

"And then I talked with him a little further in regard to it, and drew him out on the question of their knowledge of the character of the bond, and he said that we—using the term 'we'—signed the guaranty or indemnity bond which the Hutchison Company gave the village of Mecosta."

Continuing, witness said:

" I had never seen that bond.   I just took his word for it that ' we signed it,' as he said, and, said I, ' Then you were familiar or knew something about the character of these bonds?' and he says, ' Yes, we understood that they were bonus bonds.' "

This testimony came in under objection.   We do not discover that defendant's counsel claim that this was admissible as substantive proof that the bank was not a bona fide purchaser for value, and we do not, therefore, decide whether the admissions of the president of the bank were admissible as such, especially in a case where the bank was not a party.   It is claimed that the declaration was admissible as one made by a party to the suit, but we think that this overlooks the fact that Thompson sued in a representative capacity, and therefore could not bind the estate (which was the real plaintiff) by his declarations. *Fish* v. *Morse*, 8 Mich. 34; *Clark* v. *Davis*, 32 Mich. 154; *Barry* v. *Davis*, 33 Mich. 515; *Durfee* v. *Abbott*, 50 Mich. 283; *White* v. *Ledyard*, 48 Mich. 264; *Grece* v. *Helm*, 91 Mich. 457; *Miner* v. *Raymond*, 113 Mich. 28; *Hudson* v. *Saginaw Circuit Judge*, 114 Mich. 116 (47 L. R. A. 345).   It is possible that this testimony was properly admissible as impeaching testimony.   Mr. Thompson had testified that he had no knowledge of the circumstances under which the bonds were purchased, and substantially claimed ignorance as to whether or not the bank bought without notice and for value.   A foundation having been laid, we think that this testimony was admissible for such a purpose.

The court charged the jury that—

"Upon this question of knowledge, of notice, gentlemen, you are instructed that when the Jackson City Bank got the bond in question it would not be a bona fide holder, if at the time its president or cashier had any notice or knowledge of facts and circumstances which would naturally or reasonably lead an ordinarily careful and prudent man to make inquiry as to what the bond was given for."

This instruction was erroneous, for the reason that the test is, not whether the circumstances would naturally lead the ordinarily prudent man to investigate, but whether they were such as to make it bad faith not to do so. *Brewster* v. *McCardel*, 8 Wend. (N. Y.) 478; *New York Iron Mine* v. *Citizens' Bank*, 44 Mich. 353; *Mace* v. *Kennedy*, 68 Mich. 397; *Stevens* v. *McLachlan*, 120 Mich. 290; *Glines* v. *State Sav. Bank*, 132 Mich. 638. Again, if this instruction was intended to mean that knowledge by or notice to the officer purchasing the paper would bind the bank, it might not be erroneous; but it would be naturally interpreted as meaning that knowledge or notice to either of these officers would be notice to the bank, although the purchase was one made by one having neither such knowledge or notice. It would be a burden upon banks to hold that all of its officers must anticipate the offer to the bank of all doubtful paper of which he might have knowledge.

The judgment should be reversed, and a new trial ordered.

CARPENTER, McALVAY, GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred with HOOKER, J.

MOORE, C. J. (*dissenting*). This case has been here before, and is reported in 127 Mich. 522. A reference to the opinion of Justice HOOKER will do away with the need of making a long statement of facts here. Upon the last trial each party asked that a verdict be directed in its favor. The judge declined to do this, and submitted the case to the jury, which returned a verdict in favor of the defendant. The case is brought here by writ of error.

The first assignment of error requiring attention relates to the admission of a bond given to the trustees of the village of Mecosta about the time the bond sued upon was issued. The objection was, *first*, the bond did not run to the village of Mecosta, and, *second*, that the fact that it

was signed by William M. Thompson could in no way bind the Jackson City Bank. It appeared, upon the other trial and in this trial, that the bond sued upon was issued as part of a bonus to the John Hutchison Manufacturing Company to induce it to build a flouring mill which that company was to own. It was the claim of the village that the company agreed to secure the performance of its agreement by the giving of a bond indorsed by the Jackson City Bank, and that in performance of this promise it presented to the village a bond dated September 18, 1893, signed by William M. Thompson as surety, who was then one of the directors of the bank and who is one of the plaintiffs in this suit. We think the testimony was competent as being part of the history of the transaction.

Error is assigned upon the cross-examination of William M. Thompson, tending to show his knowledge of the business in which the Hutchison Manufacturing Company was engaged and of its contract with the village of Mecosta. Counsel say that, though Mr. Thompson was at the time a director of the bank, he had no control or management of the bank, and that, if he had knowledge that the bond was issued to the Hutchison Manufacturing Company for an illegal consideration, it would not be competent as evidence that the bank had notice of the consideration of the bond; citing *Shaw* v. *Clark*, 49 Mich. 384. We do not so understand the case cited. It does hold that the knowledge possessed by Mr. Shaw, a director who took no part in managing the bank, was not notice to the bank of the defect; but it does not hold it was not competent to show what knowledge Mr. Shaw had. The record discloses this bank had but four directors. Suppose each of them had been offered as a witness on the part of plaintiffs. Would it not have been competent to show by cross-examination what knowledge he possessed of the want of consideration of the bond ? To ask the question is to suggest its logical answer. Mr. Thompson was not only one of the four directors, but he was constantly employed in the bank, as a clerk most of the time; but in

the temporary absence of Mr. Newkirk, the cashier, and Mr. Thompson's father, the president of the bank, he did such of their work as he could, though he did not pass upon the discounting of paper. Upon the death of his father he became president of the bank. We think the testimony was competent. It is said:

"The court was requested to charge the jury that the fact that William M. Thompson signed a bond of the John Hutchison Manufacturing Company to secure a contract to build a mill at the village of Mecosta is no evidence that the Jackson City Bank had notice or knowledge that the bond upon which this suit was brought was invalid in the hands of the John Hutchison Manufacturing Company, which request was refused."

This is said to be error. If this evidence stood alone, there would be a good deal of force in this suggestion; but it did not. As already seen, it was competent testimony in the case. It was coupled with other testimony, and with circumstances which made it proper testimony to be considered in deciding whether the bank had established it was a bona fide holder of the bond.

The following question was put to Mr. Wilson, and error is assigned upon it:

"Q. Now, I ask you if Mr. Reynolds, in the presence of Mr. Hutchison—if Mr. Reynolds, secretary of the Hutchison Company, in the presence of Mr. Hutchison—stated to you that he understood that this bond was void, of no value, but that they took them in their business and took their chances, and that they had gone through the form of putting this into the hands of a bona fide or good faith holder, or this in substance?"

Question was objected to by the counsel for plaintiffs as being irrelevant and incompetent, which objection was overruled, and counsel for the plaintiff excepted. Mr. Wilson was acting for the village. He sought an interview with Mr. Hutchison and Mr. Reynolds, the latter of whom had the same interest in and was clothed with the same powers in relation to the Hutchison Manufacturing Company possessed by Mr. Hutchison. The plaintiff call-

ed Mr. Hutchison as a witness, and he denied that either Mr. Reynolds or himself imparted any knowledge to the bank with reference to what the bond was given for. His attention was also called to the conversation between Mr. Wilson, Mr. Reynolds, and himself. He admitted a conversation, but denied such a conversation occurred. The testimony objected to was admitted only for the purpose of bearing upon his credibility. We think it was admissible for that purpose.

Error is assigned because the court permitted testimony to be given of what William M. Thompson, then president of the bank, said about extending the time of payment of the bond after it became due. It was the claim of defendant that the bank never bought the bond, that it was acting all through the transaction for the Hutchison Manufacturing Company, and that the statement made by the president of the bank at this time tended to support this claim. We think the testimony was competent as bearing upon that question. When the case was here before it was held the bond was not valid in the hands of the Hutchison Manufacturing Company, and that it was incumbent upon the plaintiffs to show the bond was purchased without notice of its infirmities. Without repeating what was said we call attention to the language of Justice HOOKER in 127 Mich., at pages 528 and 529. The trial court, in a careful and impartial charge, left the question to the jury whether there was proof of a bona fide purchase. The jury found in favor of defendant.

Judgment should be affirmed.

BLAIR, J., did not sit.