VILLAGE OF FRANKFORT *v.* SCHMID.

Municipal Corporations—Bonds—Bona Fide Purchaser—Evidence.

Where, on a bill by a municipal corporation to enjoin the negotiation of certain bonds and for their surrender and cancellation, defendant filed an answer in the nature of a cross-bill to determine their validity and a decree for their payment, *held*, that, under the evidence, the allegations of defendant's cross-bill were established, and a decree should be entered accordingly.

Appeal from Benzie; Chittenden, J. Submitted Octo-

ber 16, 1908. (Docket No. 101.) Decided January 4, 1909.

Bill by the village of Frankfort against Frederick Schmid, surviving partner of Mack & Schmid, to enjoin the negotiation of certain bonds, and for the surrender and cancellation of the same. Defendant filed an answer in the nature of a cross-bill to determine the legality of said bonds, and a decree for their payment. From a decree for complainant, and dismissing defendant's cross-bill, defendant appeals. Reversed, and decree entered for defendant.

*D. G. F. Warner* and *Thomas Smurthwaite,* for complainant.

*B. M. Thompson,* for defendant.

McALVAY, J. Defendant is survivor of himself and Christian Mack, copartners, who resided and carried on their business at Ann Arbor. On June 5, 1895, defendant's firm purchased three certain bonds, issued by complainant village, of $1,000 each, dated February 27, 1895, payable in 10 years, with interest at 6 per cent. payable annually. Ten interest coupons of $60 each were attached to each bond. These bonds were apparently valid, and purported to be issued for park purposes. They were sold and delivered to defendant's firm by E. R. Chandler, a banker of the village of Frankfort, who acted as agent for Howard Seeley (whose relation to this transaction will appear later), for the sum of $2,700. Defendant claims the purchase of these bonds was made June 5, 1895; that his firm was a bona fide purchaser for value without notice; that the first knowledge Mack & Schmid had that the validity of the bonds was disputed was eight months later, when interest fell due, and coupons were forwarded for collection. It is now admitted that these were bonus bonds and were invalid; that issuing them as park bonds was a subterfuge; that the bonds were to go to Howard

Seeley in consideration of the establishment of a manufactory by him at Frankfort. Out of this transaction litigation arose, which in various forms has frequently been before this court. The present suit in chancery is the latest phase of this extended controversy. This case in which complainant, the village of Frankfort, filed its bill of complaint against defendant for purposes which will appear later, was before the court on demurrer by complainant to defendant's cross-bill, which was overruled by the circuit court, and affirmed by this court. *Village of Frankfort v. Schmid,* 151 Mich. 85.

An excerpt from the opinion in that case, and a reading of the cases cited wherein this controversy has previously been before this court, will give a perfect understanding of the question now before this court, and the questions heretofore settled in this litigation. The court said:

" This controversy in various forms has been frequently before us, and its history can be learned by consulting the following citations: *Mack* v. *Village of Frankfort,* 123 Mich. 421; *Schmid* v. *Village of Frankfort,* 131 Mich. 197, 134 Mich. 619; *Schmid* v. *Benzie Circuit Judge,* 138 Mich. 452; *Schmid* v. *Village of Frankfort,* 141 Mich. 291; *Schmid* v. *Benzie Circuit Judge,* 144 Mich. 680. The crucial question in the controversy is whether Mack and Schmid were bona fide purchasers of certain village bonds without notice. At one stage of this litigation, after one or more trials of the action now pending upon the coupons, the defendant in that action filed the original bill in this cause. It alleged the issue and invalidity of the bonds and coupons, the pendency of a suit upon them, plaintiff's claim that Mack and Schmid were bona fide purchasers and complainant's denial of the same, its fears that the bonds might be negotiated in a way to create a liability upon complainant, and prayed an injunction restraining such transfer, and that the bonds should be delivered up and canceled. A temporary injunction issued and is now in force. The defendant Schmid answered, claiming affirmative relief under the statute, to the end that the bonds and coupons be decreed

to be legal and valid in defendant's hands and complainant decreed to pay the same."

In that opinion the court further stated the exact issue in this suit, as follows:

"As we have said, the original bill in this case was filed for the cancellation of these bonds and coupons which it alleged to be fraudulent and void, asking an injunction to restrain sale pendente lite. The relief asked necessarily required an adjudication of the question of validity of the bonds in the hands of the defendant. It went so far as to allege plaintiff's want of bona fides, which was denied in the answer.

"There was an issue which would justify a dismissal of the bill, but, as that would leave the controversy without a complete adjudication, defendant filed a cross-bill for the purpose of obtaining a complete adjudication. It raised no new issue. It introduced no new facts. An adjudication that defendant was a bona fide holder would determine the validity of the bonds between the parties. This determination of the question would make it res adjudicata, and would conclude the complainant in any new action at law involving it, or for that matter in the action already pending if properly pleaded."

Since that decision in this case, and before the case was brought to a hearing upon the merits in the court below, all of the disputed bonds became due. A decision at this time then finally disposes of the entire controversy between the parties.

There is but a single issue in the case. It is an issue of fact, and it has during the years of this litigation been the principal issue involved. It is agreed that these bonds are valid in the hands of an innocent purchaser for value. The question is: Were Mack and Schmid innocent purchasers of these bonds for value without notice of their invalidity? When the suit at law to recover interest due upon these bonds was before this court the second time (reported in 134 Mich. 619), the court, in referring to the evidence in the case upon the question of the bona fides of the plaintiff in that suit in the purchase of the bonds, said:

" There is no evidence in the case which justifies the conclusion that the plaintiffs did not act upon the honest belief that the bonds were what they appeared to be, viz., park bonds."

Plaintiff insisted that under the evidence in the case the court should have directed a verdict for him, and asked this court to enter such judgment. The court refused to do this on the ground that there was no special verdict upon which to base such judgment. The case was reversed and a new trial ordered. The third trial was had after the bill of complaint in the suit at bar was filed. From a judgment for defendant plaintiff appealed, and again the judgment was reversed and a new trial ordered. 141 Mich. 291.

When the case at bar came on to be heard, it was stipulated in open court:

" That the testimony heretofore taken in this court in the cases at law wherein Mack & Schmid or Frederick Schmid, survivor, is plaintiff and the village of Frankfort is defendant, be and the same is hereby stipulated to be submitted to this court as the evidence in the case now under consideration."

This court, upon the occasions when the law case was before it for consideration, has very properly declined to pass upon the facts in the case. The quotation from the opinion of the court (134 Mich. 619), in passing upon the request to enter a judgment in favor of plaintiff in this court, gives a very strong intimation of the weight which the court at that time would have given to the evidence in the case, if properly before it.

Upon the third trial some new evidence was introduced by both sides. On the part of the village, to show lack of bona fides in Mack and Schmid in their purchase, Howard Seeley was produced as a witness. In 141 Mich. 293 this court states the substance of his testimony as follows:

" Seeley testified that about the middle or latter part of June, probably from the 12th to the 20th, he received a

letter from Mack and Schmid, asking if he had or expected to have any Frankfort bonds to sell; that he at once answered that he would have some; that they were bonus bonds for building a factory; and that he properly addressed and mailed the same. Upon his statement that the former letter was lost, and the plaintiff's denial that they ever had such correspondence, he was permitted to give oral testimony of the substance of such letters."

Mr. Seeley is the party who was to receive these bonus bonds from the village. On a former occasion the court held that the delivery of the bonds to Chandler was a delivery to Seeley. In 141 Mich. 291, the court held that Seeley, having received $2,400 of the proceeds of the sale to Mack and Schmid, was estopped from denying their title, and that the village could not question the validity of this purchase unless Seeley could. This has reduced the proposition to its lowest terms, viz., the question of the bona fides of Mack and Schmid.

As against the witness Seeley stands the testimony of Messrs. Mack and Schmid and their bookkeeper, Henry Mann, two of them denying that any such letter was written or received to their knowledge, showing that files were kept and copies made of all letters sent and received by them in all their business transactions and no such letters can be found, and the testimony of Mr. Mack, now deceased, that he first heard the validity of these bonds questioned when the coupons were forwarded to collect interest. It is remarkable that Seeley who was the one person most interested in these bonds, and who had accepted the $2,400 of the proceeds of the sale to plaintiff's firm, should have withheld for five years the fact that he had this correspondence with Mack and Schmid at the time they purchased. These letters are not produced. He claims he lost one, and made no copy of the other. Four hundred dollars was paid June 5th when plaintiff claims the purchase was made. Other payments were made on the 6th of June, and the balance of $500 on June 22d. That this correspondence occurred shortly before these last payments and caused no hesitancy on the

part of the purchasers is remarkable; that at this time business men of large banking and mercantile interests should write the letter and receive the answer as detailed by Seeley is highly improbable; and that Seeley should never mention the fact until five years had elapsed, although he had knowledge of this litigation, and was in Frankfort each year, is incredible.

The fair preponderance of the proof introduced upon the third trial is in favor of the defendants in the case at bar. In fact, we are satisfied that it adds in their favor to the weight of evidence theretofore in the case.

To discuss further the evidence in the case would be of no benefit. The substance of much of it appears in the cases cited. Reviewing and considering with care all of the evidence before us, we are clearly satisfied that Mack and Schmid were bona fide purchasers without notice of the invalidity of said bonds, and that there is no evidence which would justify a conclusion to the contrary.

Therefore the decree of the circuit court is reversed, and a decree will be entered in this court so declaring, and giving and granting defendant the relief prayed by his cross-bill, determining the amount of principal and interest due him on said bonds and coupons from complainant, and that he do recover the same in manner provided by law against said village of Frankfort, complainant, together with his costs of both courts.

BLAIR, C. J., and GRANT, HOOKER, and MOORE, JJ., concurred.