CEILAN M. SPITZER AND ADELBERT L. SPITZER V. THE VILLAGE OF BLANCHARD.

*Municipal corporations — Taxation—Bonds — Bona fide holder— Estoppel.*

1. Bonds issued by a village incorporated under the general law of this State, in excess of the amount authorized by such incorporation act, are issued without authority of law.

So *held*, where bonds to the amount of $650 recited that they were issued in conformity with the general laws of the State under which the village was incorporated, and were authorized by the board of trustees at a regular meeting thereof held on a designated day, for the purpose of purchasing certain fire apparatus, and were payable out of the general funds of the village. The bonds exceeded in amount the sum for which the council could incur indebtedness without a vote of the electors, which was not had, and were also in excess of the indebtedness which the electors could authorize the council to incur.[1]

2. Where there is no authority in a village council or in its president and clerk to issue the bonds of the village, unless first authorized to do so by a vote of the electors, and the incorporation act does not make the president and clerk the judges to determine and certify to the fact of such election, a recital in such bonds, which are signed by such president and clerk, that they had been issued in accordance with law, binds no one dealing with the bonds.

3. There can be no implied liability of a village where there can be no binding express contract.

[1] See *Manfg. Co. v. Echtinaw*, 81 Mich. 416.

4. The following general propositions are summarized from the opinion of Chief Justice CHAMPLIN:

a—It is not entirely accurate to say that holders of municipal bonds will be protected as *bona fide* purchasers if the corporation could, under any circumstances, issue the same.

b—Where there is a total want of power, under the law, in the officers or board who issue municipal bonds, they will be void in the hands of innocent holders, the distinction being between questions of fact and of law. If the former, and the officers or board are authorized by law to determine the fact, their determination is final and conclusive; and although such determination may be contrary to the fact, yet, if it is recited in the bond that the necessary and proper steps required by law to be taken have been taken, the municipality is estopped from denying that they were taken.[1]

c—All persons are presumed to know the law, and if it creates conditions precedent upon which the right to issue bonds at all depends, and these conditions are not complied with, and the law appoints no board or officer to determine *that* fact, there cannot be an innocent holder of such bonds.

Error to Isabella. (Hart, J.) Argued June 27, 1890. Decided August 1, 1890.

*Assumpsit.* Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*P. F. Dodds* (*H. H. Graves,* of counsel), for appellants, contended:

1. In the case of bonds issued by a municipal corporation, if it could, under any circumstances, issue the same, and they are in proper form, the holder will be protected as a *bona fide* purchaser; citing *Bank v. Village of Rome,* 19 N. Y. 20; *Van Hostrup v. Madison,* 1 Wall. 291; *Meyer v. Muscatine,* Id. 384; *Gelpcke v. Dubuque,* Id. 175; *Mercer Co. v. Hacket,* Id. 83; *Supervisors v. Schenck,* 5 Id. 784; *Lexington v. Butler,* 14 Id. 296; *Hackett v. Ottawa,* 99 U. S. 95; *Pompton v. Cooper Union,* 101 Id. 204.

2. If the power exists to issue municipal bonds, the fact that they exceed the amount limited by law does not impair their validity in the hands of *bona fide* holders; citing *Marcy v. Oswego,* 92 U. S. 637; *Wilson v. Salamanca,* 99 Id. 499; *Walnut v. Wade,* 103 Id. 683; nor will irregularities or misconduct on the

---

[1] See *Cedar Springs v. Schlich,* 81 Mich. 405.

part of the officers issuing them have such effect; citing *East Lincoln v. Davenport*, 94 U. S. 801.

3. When bonds recite the existence of precedent conditions, they are conclusively presumed to exist when the bonds are in the hands of *bona fide* holders; citing *Commissioners v. Aspinwall*, 21 How. 539; *Bissell v. Jeffersonville*, 24 Id. 287; *Lynde v. County*, 16 Wall. 13; *Coloma v. Eaves*, 92 U. S. 484; *Venice v. Murdock*, Id. 494; *Humboldt v. Long*, Id. 642; *Leavenworth v. Barnes*, 94 Id. 70; *Commissioners v. Bolles*, Id. 104; *Commissioners v. Clark*, Id. 287; *San Antonio v. Mehaffy*, 96 Id. 312; *Warren Co. v. Marcy*, 97 Id. 96; *Block v. Commissioners*, 99 Id. 694; *Commissioners v. Nichols*, 14 Ohio St. 260.

*Butterfield & Keeney*, for defendant, contended:

1. In the absence of a vote of the electors, there was an utter want of authority on the part of the council to issue the bonds, which are void, even in the hands of innocent purchasers for value; citing *Rochester v. Bank*, 13 Wis. 432; *Carpenter v. Town of Lathrop*, 51 Mo. 483; *George v. Oxford Township*, 16 Kan. 72; *Lewis v. Commissioners*, 12 Id. 186; *Veeder v. Town of Lima*, 19 Wis. 280; *Starin v. Town of Genoa*, 23 N. Y. 439; *Harding v. Railroad Co.*, 65 Ill. 90; *Barnes v. Town of Lacon*, 84 Id. 461; *Marsh v. Fulton Co.*, 10 Wall. 676; *Harshman v. Bates Co.*, 92 U. S. 569; *McClure v. Oxford*, 94 Id. 429; *County of Bates v. Winters*, 97 Id. 91; *Katzenberger v. Aberdeen*, 121 Id. 172; *Hopple v. Brown Township*, 13 Ohio St. 311; *Beckel v. Union Township*, 15 Id. 437.

2. It devolves upon the plaintiffs to prove affirmatively that the bonds were authorized by a majority vote of the electors; citing *Carpenter v. Town of Lathrop*, 51 Mo. 483; *Starin v. Town of Genoa*, 23 N. Y. 439.

3. If municipal bonds refer upon their face to the authority under which they are issued, all persons are bound to take notice of the extent of the powers of the agent who issued them; citing *City of Aurora v. West*, 22 Ind. 88; *Barnes v. Town of Lacon*, 84 Ill. 461.

4. The bonds are void because in excess of the limitation prescribed by the express legislative enactment; citing How. Stat. § 2954; *Water Works v. Mayor*, 59 Mich. 311.

5. Under How. Stat. § 2953, the council could not incur a liability to be discharged in subsequent years; citing *Putnam v. Grand Rapids*, 58 Mich. 416; *Water Works v. Mayor*, 59 Id. 311.

6. In order to the ratification by a municipal corporation of an unauthorized contract, it must be one which it could originally have legally entered into; citing *Bridge Co. v. Township*

*of Jasper,* 68 Mich. 441; *Taymouth v. Koehler,* 35 Id. 22; *Thomas v. Pt. Huron,* 27 Id. 320; *Commissioners v. Van Dusan,* 40 Id. 429.

CHAMPLIN, C. J. This action is brought by the firm of Spitzer & Co., of Toledo, against the village of Blanchard, to recover the amount of certain bonds claimed to have been given on the purchase of a fire apparatus.

The defendant is a village organized in Isabella county under the general law for the organization of villages, being chapter 81 of Howell's Annotated Statutes. The first count in the declaration sets up that on October 9, 1885, one John T. Noble submitted to the village of Blanchard a proposition in writing for the sale to it of certain fire-extinguishing apparatus to be manufactured by John T. Noble. In this proposition he agreed to manufacture, and furnish to the village, and to ship the same within 60 days after the acceptance of his proposition, one hand-engine, one hose-cart, and 500 feet of hose; the apparatus to be built in accordance with the following specifications as regards equipment, dimensions, material, finish, etc., to wit: One crane-neck hand-engine, capable of turning on its own length, with two $5\frac{1}{2}$ inch pumps, side-brakes, one arch-scroll (name on scroll, "Rescue No. 1"), one bell on scroll, room on brakes for 10 men, and suction carried squirrel-tail fashion, strains on end of suction, Sarven "A" wheels, and tongue and drag-rope (the hose-cart to be capable of carrying 600 feet of hose in safety), 500 feet of hose, all to be first-class, for the sum of $750, payable as follows: One hundred dollars on delivery, and $300 in June, 1886, and $350 and interest in June, 1887 (apparatus at the village of Blanchard, Mich.). Noble agreed that the material and workmanship should be of the best character, and that he would at his own expense replace such parts, if any, as might fail, if such failure was attributable to a

defect of material or inferior workmanship. And he agreed to fully guarantee the apparatus to perform efficient fire duty, accidents or injuries excepted.

The declaration alleged that the common council of the village of Blanchard, at a meeting duly and regularly called, passed and adopted on behalf of the village the following resolution:

"*Resolved*, By this board of trustees that we purchase of J. T. Noble, of St. Louis, Michigan, the fire apparatus as per his proposition made to this board in writing, to wit, one hand-engine, one hose-cart, and 500 feet of hose, for the sum of $750, to be paid for as follows: One hundred dollars to be paid on delivery thereof; three hundred dollars by a bond of this village made payable to the said J. T. Noble, or order, and to become due June 1, 1886; three hundred and fifty dollars by a bond of this village made payable to said J. T. Noble, or order, and to become due June 1, 1887; said bonds to draw interest at the rate of seven per cent. per annum, payable annually; and that the president and clerk of this board be and are hereby authorized and empowered to execute and deliver to the said J. T. Noble said bonds as aforesaid, upon the delivery of the aforesaid fire apparatus."

The declaration in this count also avers that the contract was entered into on October 9, and signed by Ira Higby, president *pro tem.*, and L. A. Houghton, clerk, and John T. Noble, in which Noble agreed, as party of the first part, to sell to the village of Blanchard, party of the second part, the fire apparatus described as one crane-neck, side-brake hand-engine, one hose-cart, and 500 feet of hose, all to be in accordance with the specifications and guaranties set forth in the proposals of the party of the first part, and annexed to the contract, the same to be delivered free on board the cars at St. Louis, Mich., on or before December 9, 1885; and the second party agreed to purchase and pay for the aforesaid property, delivered as aforesaid, the sum of $750, in the following manner: One hundred dollars on delivery, $300

and interest in June, 1886, and $350 and interest in June, 1887.

It is further alleged that Noble delivered to the village of Blanchard the said apparatus in good condition, and performed all things by him to be performed; that the apparatus was duly received and accepted by the village on or about November 9, 1885, at a special meeting of the common council of the village, which was duly and regularly called, and at which the following resolution was adopted, to wit:

"That inasmuch as J. T. Noble has furnished and delivered the fire apparatus in accordance with his proposition and contract with this village, under date of October 9, 1885, and that the same having proven satisfactory upon a trial thereof, that we do now accept the same; and that the clerk and president execute and deliver the bonds of said village to said J. T. Noble in accordance with a resolution passed by this board October 9, 1885."

It further alleges that on November 17, 1885, the village, by its president and clerk, executed and delivered to said John T. Noble its two bonds, Nos. 1 and 2, respectively, which bond (No. 1) reads as follows:

"No. 1.
"BLANCHARD VILLAGE BOND, $300.

"KNOW ALL MEN BY THESE PRESENTS, That the village of Blanchard, in the county of Isabella, and State of Michigan, acknowledges itself justly indebted, and hereby promises to pay, to John T. Noble, or order, three hundred dollars on the first day of June, A. D. 1886, at Gardner & Gardner's Bank, Edmore, Michigan, with interest at the rate of 7 per cent. per annum.

"This bond is issued in conformity with the general laws of the State under which the said village of Blanchard is incorporated, and authorized by the board of trustees at a regular meeting thereof held at the village of Blanchard aforesaid, on the ninth day of October, 1885, for the purpose of purchasing certain fire apparatus, and is payable out of the general fund of said village.

"In testimony whereof the president and clerk have signed this bond this seventeenth day of November, 1885.

"HENRY V. DARLING, President.

"L. A. HOUGHTON, Clerk."

The other of said bonds is of like tenor and effect, whereby the village promises to pay $350 to the order of John T. Noble, on the first day of June, 1887, at the same place and rate of interest; and it contains the same recital as bond No. 1. Plaintiffs allege as a breach that the bonds have not been paid, nor the interest thereon.

The second count of the declaration counts upon the proposition, contract, and resolutions, independent of the bonds. The third count briefly counts upon the bonds themselves without setting forth the consideration.

The defendant pleaded the general issue, and gave notice of several special defenses, and, among others, that the bonds were invalid for the reason of the want of power to issue them under the Constitution and laws of Michigan. And this raises the main point argued in the case.

The Constitution, by Article 15, § 13, provides:

"The Legislature shall provide for the incorporation and organization of cities and villages, and shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit."

The Legislature, by Act No. 62, Laws of 1875, passed an act granting and defining the powers and duties of incorporated villages, and it is under this act that the village of Blanchard is incorporated. Chapter 9 of that act relates to finance and taxation, and section 1 (How. Stat. § 2923) authorizes the village council to raise by general tax upon all the real and personal property liable to taxation in the village, exclusive of taxes for highway and street purposes, such sum, not exceeding in any one year $1\frac{1}{4}$ per cent. of the assessed value of such

property, as they shall deem necessary for the purpose of defraying the general expenses and liabilities of the corporation, and to carry into effect the powers granted in that act.    Among other powers granted to the village is the power to make ordinances for the organization and regulation of the fire department, and for the prevention and extinguishing of fires.[1]    Chapter 9 also provides (section 7) that the assessor of the village shall in each year make an assessment roll containing the description of the real and personal property liable under the laws of the State to taxation in the village, and shall set down in the roll the valuation of such property at its true cash value, and in doing so he shall conform to and be governed by the provisions of law governing the action of supervisors of townships performing like service, unless otherwise in the act provided.    Provision is also made for the review of this assessment, and that the roll, after review, shall be certified to the village council, who, after an examination, shall certify it back to the assessor, together with the amount which they require to be raised by the general tax for highway and other general purposes.    The assessor is then to spread the tax upon the assessment roll, and deliver it to the marshal, with the warrant of the president annexed for collection.    Provision is also made for a return and sale of the property in case of non-payment.

Section 31 of chapter 9 (as amended in 1879), being section 2953 of Howell's Annotated Statutes, provides that—

"The council of any village organized under the provisions of this act may, by a concurring vote of two-thirds of the trustees elect, borrow, in any year, in anticipation of the collection of taxes for the same year, such sum, nor exceeding one-half of the tax, as may be necessary to defray current expenses.. The money so borrowed shall be so repaid from such tax when collected."

---

[1] How. Stat. § 2847 (subd. 16).
    82 MICH.—16.

Section 32, being section 2954 of Howell's Statutes, provides as follows:

"Should any greater amount be required in any year for the purchase of grounds for erecting public buildings, or for other necessary corporate purposes, than can be raised by the council under the foregoing provisions of this chapter, such amount may be raised by tax or loan, or partly by tax and partly by loan, if authorized by a majority vote of the electors voting upon the question at an annual or special village election. The amount that may be voted or raised, in any year, under the provisions of this section, shall not exceed two per cent. of the assessed valuation of the property in the village as shown by the last preceding tax roll made therein."

Section 33, being section 2955 of Howell's Statutes, provides that—

"The proposition to raise such additional amount shall be submitted to a vote of the electors by an ordinance or resolution of the council, distinctly stating the purpose of the proposed expenditure for which said money is required, the amount proposed to be raised therefor, and whether by tax or loan, and appointing the time when the vote will be taken."

This section also provides for publication of notice of the election.

Section 35, being How. Stat. § 2957, reads as follows:

"No loans shall be made by the council, or by its authority, in any year, exceeding the amounts prescribed in this act. For any loans lawfully made, the bonds of the village may be issued, bearing a legal rate of interest. A record showing the dates, numbers, and amounts of all bonds issued, and when due, shall be kept by the clerk."

Authority is given by chapter 10 to the council to purchase and provide suitable fire-engines and apparatus for the extinguishing of fire, but the only method provided for meeting the expense of purchasing such fire-engines and apparatus is that above quoted. Chapter 11

of the act authorizes the village to construct and maintain water-works; and for this purpose express provision is made for borrowing the money to be used exclusively for that purpose, thus, by implication, prohibiting the borrowing of money for purchasing fire-engines and apparatus except under the provisions and restrictions above set forth. The provisions above quoted from chapter 9 relative to the authority to borrow money for necessary corporate purposes, exceeding in amount that which the common council can raise by ordinary taxation in any one year, do not provide how the votes shall be canvassed, or the result certified.

It is claimed on behalf of the defendant that the bonds upon which suit is brought are void for the reason that the amount is in excess of $1\frac{1}{4}$ per cent. of the assessed valuation of the real and personal property in the village for the year in which the indebtedness was incurred, and that there was no vote of the electors of the village authorizing their issue. The circuit judge was of this opinion, and directed a verdict for the defendant. The plaintiffs claim that, in case of bonds issued by a municipal corporation, if the corporation could under any circumstances issue the same, and they are proper in form, the holders will be protected as *bona fide* purchasers, and when bonds recite the existence of precedent conditions they are conclusively presumed to exist when the bonds are in the hands of *bona fide* holders. And they further claim that the plaintiffs had a right to depend on the circumstances as they appeared, knowing that, to the extent necessary to execute the special powers and functions with which defendant was endowed by its charter, there was an implied incidental authority to contract obligations and incur debts, there being no express limitations in such charter.

We think that there are express limitations in the

charter upon the power of the council to incur indebtedness, and that such limitations are found in the restrictions of their power to incur such indebtedness not to exceed, in ordinary cases, $1\frac{1}{4}$ per cent. upon the assessed valuation of the real and personal property in the village, and that they cannot exceed that limit unless they are authorized so to do by a vote of the electors, in the manner and under the circumstances prescribed in the act, in which case they are limited to 2 per cent. of the assessed valuation of the property in the village as shown by the last preceding tax roll made therein. The record in this case shows that the amount of such assessment was $11,708. This would only permit them to incur indebtedness for ordinary purposes of $146 and a fraction. And this shows that they could not incur the indebtedness for the purchase of this fire apparatus without a vote of the electors.

It is not entirely accurate to say that holders of bonds issued by a municipal corporation will ' be protected as *bona fide* purchasers if the corporation could, under any circumstances, issue the same. This question was considered by the Supreme Court of the United States in *Dixon Co. v. Field,* 111 U. S. 89 (4 Sup. Ct. Rep. 315), where the proper distinction is drawn as to irregularities in the exercise of the power conferred and the total want of power to do the act. Where there is a total want of power, under the law, in the officers or board who issue the bonds, then the bonds will be void in the hands of innocent holders, the distinction being between questions of fact and questions of law. If it is a question of fact, and the board or officers are authorized by law to determine the fact, then their determination is final and conclusive. And although it may be contrary to the fact, yet, if recited in the bond that the necessary and proper steps required by law to be taken had been taken, then

the municipality is estopped from denying that they were taken. But it is held that all persons are presumed to know the law, and if the law created conditions precedent upon which the right to act at all depended, and these conditions were not complied with, and the law appointed no board or officer to determine that fact, then there could not be an innocent holder of such bonds. *Bernards Township v. Morrison,* 10 Sup. Ct. Rep. 333.

In this case there was no authority in the council nor in the president and clerk to issue the bonds in suit, unless first authorized to do so by a vote of the electors, and the law did not make the president and clerk the judges to determine and certify the existence of the fact as to whether there had been an election or not; and consequently the recitals in the bonds that they had been issued in accordance with law bound no one, and protected no one dealing with the bonds. Speaking upon this subject Mr. Justice Matthews, in *Dixon Co. v. Field,* said:

"Recurring, then, to the consideration of the recitals in the bonds, we assume, for the purposes of this argument, that they are in legal effect equivalent to a representation or warranty or certificate on the part of the county officers that everything necessary by law to be done has been done, and every fact necessary by law to have existed did exist, to make the bonds lawful and binding. Of course, this does not extend to or cover matters of law; all parties are equally bound to know the law; and a certificate reciting the actual facts, and that thereby the bonds were conformable to the law, when, judicially speaking, they are not, will not make them so, nor can it work an estoppel upon the county to claim the protection of the law. Otherwise, it would always be in the power of a municipal body to which power was denied to usurp the forbidden authority by declaring that its assumption was within the law."

In the present case there was no power to issue the

bonds of the village except by a vote of the electors, and then only to the amount of 2 per cent. upon the assessed valuation.    Under this restriction they could not issue bonds to exceed $234.16.    So the bonds issued were in excess of the amount authorized.    The limit of power is determined by three facts:

1. The amount of bonds to be issued.
2. The assessed value of the property of the village.
3. The vote of the electors authorizing the issue.

The amount of the bonds to be issued was known and appears upon the face of the bonds.    The assessed valuation and the vote of the electors are matters of public record, and are open to all the world for inspection and ascertainment, and are as accessible to intending purchasers as other persons.    The limitation of power upon the common council appears in the public statute, and is presumed to be known by all dealing with corporate authorities or in corporate bonds.    *McBrian v. Grand Rapids*, 56 Mich. 95 (22 N. W. Rep. 206).

The testimony failed to show an acceptance of the apparatus.    The special meeting at which such action was attempted was not legally called, and the resolution passed by it was not binding on the corporation.    The corporate authorities have steadily refused to use or accept the apparatus, and have housed it subject to Noble's order. There can be no implied liability of a village where there can be no binding express contract.    In this case there never was a valid contract between Noble and the village because of the want of authority of the village to incur the liability in excess of its power to raise by tax the money to liquidate such indebtedness.

At the time the contract was entered into the village had no funds at its disposal, from liquor tax or otherwise,

out of which it could pay for the apparatus.     The question of authority relates to that time.

The judgment must be affirmed.

The other Justices concurred.