SCHMID *v.* VILLAGE OF FRANKFORT.

131 197
s134 620
131 197
138 452
131 197
s141 292
131 197
e144 681
131 197
145 s582
131 197
148 99
131 197
p151 85
131 197
155 315

1. MUNICIPAL CORPORATIONS—BONDS—AUTHORITY TO EXECUTE.

A contention that a resolution of a village council authorizing, in general terms, the execution of bonds, did not cover the bonds in controversy, is untenable, where it appears that no other bonds had been authorized by the electors, and all parties proceeded upon the theory that those were the bonds referred to.

2. SAME—DELIVERY—ESCROW—EVIDENCE.

Upon an issue whether certain village bonds, placed with a bank "in escrow," and intended for delivery to a certain person on performance of a stated condition, were deposited for safe-keeping merely, or were to be delivered by the bank when the condition should be performed, evidence that the village council was afterwards advised by the bank that the bonds had been delivered, and made no protest, was admissible.

3. SAME.

Upon a consideration of all the evidence, *held*, that the bank was authorized to deliver the bonds on performance of the condition.

4. SAME—BONA FIDE PURCHASERS.

Where municipal bonds are deposited in escrow, to be delivered on performance of a certain condition, a delivery by the depositary may be effectual as to a *bona fide* purchaser, though the condition has not been performed.

5. SAME—NOTICE.

One who purchases municipal bonds in reliance on recitals therein showing them to have been issued for a lawful purpose will be protected, though an examination of the records of the municipality would have shown the purpose to be unlawful.

Error to Benzie; Chittenden, J.   Submitted April 10, 1902.   (Docket No. 71.)   Decided June 24, 1902.

*Assumpsit* by Frederick Schmid, surviving partner of the firm of Mack & Schmid, against the village of Frank-

fort, upon municipal bonds. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*B. M. Thompson,* for appellant.

*D. G. F. Warner* and *Thomas Smurthwaite,* for appellee.

HOOKER, C. J. The plaintiffs brought an action for interest due upon municipal bonds. The defense was: (1) That the bonds had never been delivered by the municipality; and (2) that the plaintiffs were not *bona fide* purchasers. The case was tried by a jury, and the court directed a verdict for the defendant.

It is admitted that the bonds were illegal and void, because they were delivered to one Seeley in pursuance of a contract to aid a private enterprise, if they were delivered at all. At the same time they were valid upon their face, reciting that they were made and issued for a lawful purpose. There can be no doubt that the bonds were delivered to the banker, Chandler, for deposit in his vault until they should be earned by Seeley. They were put into an envelope with the following indorsement upon it:

"Inclosed are three bonds of the village of Frankfort, of one thousand dollars each, to be given to Howard Seeley, or the Frankfort Woodenware Co., as soon as their factory is completed and ready to run. They are now placed in escrow until that time, in a vault of the Bank of Frankfort for safe-keeping, in accordance with a vote of the council February 27, 1895. If the factory is not completed, ready to run, by August 26, 1895, the bonds are to be returned to the village council and destroyed, as per vote of council March 4, 1895."

Counsel for the defendant claim: (1) That the council did not authorize the deposit of park bonds, but of other bonds; (2) that the deposit was not with a view to delivery, but merely safe-keeping.

The record of the common council shows that it was moved "that the president and clerk be instructed to sign

the contract in duplicate with Howard Seeley. Also to execute three bonds, of the denomination of one thousand dollars each, payable in ten years, and bearing interest at six per cent. per annum, payable annually. Said bonds to be placed in escrow in a vault in the Bank of Frankfort, until said factory is completed and ready to run; then to be turned over to said Howard Seeley as per contract." This motion was carried by a vote of four to two. The testimony shows that negotiations had been pending for some time in relation to the establishment of a woodenware factory by Seeley, for which he was to receive a bonus in the way of bonds from the municipality. To give it the semblance of legality, the council submitted to the electors of the village a proposition to issue bonds for the purpose of a public park. It was understood by the electors, as well as the council, that this was to be a subterfuge, and that the bonds were really to be delivered to Seeley as a bonus. At an election called for the purpose, the proposition to bond the village for park purposes was carried, and it was in furtherance of the scheme that the resolution quoted was adopted. It was followed by a motion that the special election held on the 30th of January, 1895, for the issue of park bonds, be declared to have resulted in the carrying of the proposition. The record fails to show that any other bonds had been talked about or authorized. The resolution mentioned was followed by the execution of the bonds in question as park bonds, indicating that the officers who executed the bonds understood that those were the bonds referred to by the resolution. The bonds were delivered to the bank, as already stated, in escrow. There was testimony offered tending to show that some time later an oral report was made to the council by the banker that the bonds had been delivered to Mr. Seeley. This testimony was excluded, and we think erroneously. It was competent to show that the council was informed of the delivery of the bonds, and made no protest, as tending to show that they were not delivered to the bank to be held for the council, but that they were to be delivered

when earned, in accordance with the *memoranda* upon the envelope. The term " escrow " implies that the depositary is not to hold the deposit at the will of the depositor, but that it is to be delivered to the person entitled to it upon the happening of the event upon which the delivery is conditioned. We think the circumstances surrounding this case show plainly that the bonds were delivered to the bank by the officers of the council, under direction of the council, to be held for Seeley, and that the bank was to deliver them to Seeley upon performance of his obligation within the time prescribed. Whether the condition was performed or not, we need not inquire. The bonds were issued, and were delivered to Seeley, by whom they were negotiated to plaintiffs through the bank. We think this constitutes a sufficient delivery.

The remaining question relates to the good faith of the plaintiffs' purchase. That was a question of fact, and should have been left to the jury, unless it can be said that the testimony conclusively shows that plaintiffs were not such purchasers. There was testimony that they relied upon the recitals in the bonds, which, as already stated, asserted that they were executed and issued for the purpose of a public park. Undoubtedly, if the purchasers had been aware of the resolution under which these bonds were issued, it would have been notice of their invalidity; but the evidence indicates that they had no such notice, and that they relied upon the recitals in the bonds, and an accompanying letter from the prosecuting attorney that the proceedings were, upon their face, valid, as to the vote of the electors to issue park bonds. We have held in several cases that one relying upon the recitals in a bond that it was lawfully issued may be a purchaser in good faith. *Common Council of Cedar Springs* v. *Schlich,* 81 Mich. 405 (45 N. W. 994, 8 L. R. A. 851); *Gibbs* v. *School District,* 88 Mich. 334 (50 N. W. 294, 26 Am. St. Rep. 295); *Thompson* v. *Village of Mecosta,* 127 Mich. 522 (86 N. W. 1044). The case is not within the rule laid

down in *Portsmouth Sav. Bank* v. *Village of Ashley,* 91 Mich. 670 (52 N. W. 74, 30 Am. St. Rep. 511).

The court erred in directing a verdict for the defendant, and the judgment is therefore reversed, and a new trial ordered.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.