MEYERING LAND CO. *v*. SPENCER.

OAKLAND HILLS COUNTRY CLUB *v*. AUDITOR GENERAL.

1. DRAINS—SEWERS—DRAIN COMMISSIONER—JURISDICTION.
   Construction of sewer in pursuance of a petition for a drain was without the jurisdiction of the drain commissioner under Act No. 316, Pub. Acts 1923.

2. SAME—SEWERS—SURFACE DRAINS—STATUTES.

Proceedings for establishment of drainage district and construction of drains at public expense to serve subdivided property as sewer where topography rendered surface water drains unnecessary, *held*, void where had under Act No. 316, Pub. Acts 1923.

3. SAME—EQUITY—JURISDICTION—CERTIORARI.

Proceedings for establishment of drainage districts and construction of drains where topography renders drains unnecessary and statute did not then give drain commissioner jurisdiction to construct sewers *held*, subject to attack in equity, certiorari not being exclusive remedy where commissioner has no jurisdiction (Act No. 316, Pub. Acts 1923).

Appeals from Oakland; Doty (Frank L.), Covert (Frank L.), and Gillespie (Glenn C.), JJ. Submitted October 18, 1935. (Docket Nos. 119, 120; Calendar Nos. 38,566, 38,567.) Decided December 10, 1935.

Separate bills by Meyering Land Company and International Realty, Inc., Michigan corporations, against A. W. Spencer and others and by the Oakland Hills Country Club, a Michigan corporation, against John K. Stack, Auditor General, and others to declare drain proceedings void. Cases consolidated for trial and appeal. Bills dismissed. Plaintiffs International Realty, Inc., and Oakland Hills Country Club appeal. Reversed.

*Clark, Klein, Ferris & Cook,* for plaintiff International Realty, Inc.

*Frank C. Cook* and *John P. O'Hara,* for plaintiff Oakland Hills Country Club.

*David C. Pence,* Prosecuting Attorney, and *Donald C. Porritt,* Assistant Prosecuting Attorney (*Good-*

*enough, Voorhies, Long & Ryan,* of counsel), for defendants.

POTTER, C. J.   Plaintiffs filed their bills of complaint herein on their own behalf and on behalf of all other landowners in the Bloomfield village drain district, in Oakland county, to set aside and declare fraudulent certain drain proceedings taken for the purpose of laying out and establishing the drainage districts and drains constructed, as they allege, to serve the drainage district with sewerage, and to restrain and enjoin the collection of taxes levied and assessed against their property, and for other purposes.   From decrees for defendants, plaintiffs appeal.

May 28, 1925, application was made to lay out and designate a drainage district under Act No. 316, Pub. Acts 1923.   July 13, 1925, the drain commissioner laid out and designated a drainage district known as the Bloomfield village drain district.   This order described the course of the drain and four branches thereof and estimated the cost of the proposed drain as $327,321.   Most of this drain was laid out with reference to existing streets in subdivided property, and in size varied from a 96-inch sewer by various stages to a 48-inch sewer.   The size of the branches ranged from 42-inch sewer to 21-inch sewer.

July 20, 1925, an application for establishing and constructing a drain was filed with the drain commissioner, apparently based upon the establishment of the drainage district which had been laid out and established by the drain commissioner in pursuance of the proceedings above mentioned.

November 20, 1925, a final order of determination establishing the drainage district and describing the course and character of the proposed drain was

made. The contract was let, bonds in the amount of $525,000 were subsequently authorized, the assessment levied against the property of the Meyering Land Company consisting of 154 acres was $43,453.50, and the assessment levied against the Oakland Hills Country Club $70,658.72.

The total number of acres in the village of Bloomfield drain was 2,161.35; the total length of the drain, 5.7 miles, or approximately 30,270 feet. Approximately 15,000 feet of the drain was laid out in the property of Judson Bradway, Bloomfield village, comprising about 500 acres of land. The first four branches of the drain are in this property.

All of the drain north of Maple road was through subdivided property and laid out in streets. Of the portion of the drain south of Maple road, all but 2,600 feet through a portion of the Meyering property and 700 feet of open drain at the outlet was through subdivided property and followed the streets. The balance of the property north of Maple road known as the Judson Bradway Bloomfield village was served by a supplemental sanitary sewer connected with the Bloomfield village drain. All of that portion of the drain contains 6-inch Y's for house connections at every lot along the course of the drain.

May 14, 1926, application for laying out and designating a drainage district was made. It was subsequently known as Bloomfield storm sewer drain No. 1. This drainage district as laid out consisted of 870 acres, the length of the drain 37,842 feet, the maximum size of the drain 66 inches and its minimum size 12 inches, its maximum depth 37.1 feet and its minimum depth 4.1 feet. The construction was entirely of underground precast concrete pipe with the exception of 1,300 feet of monolithic con-

crete construction. The total cost of this drain was $285,000, of which $72,062.35 was assessed against the property of the Oakland Hills Country Club, plaintiff.

No. 1 drain empties into the Bloomfield village drain and serves subdivided property. The branches are so laid out that they reach and serve every single lot in the subdivisions adjoining and in part surrounding the Oakland Hills golf course. The general construction of this drain is similar to that of the Bloomfield village drain, and 6-inch Y's were provided for house connections at every lot.

The specifications called for and both projects were constructed with cement joints on the larger sizes and jute filled joints on the smaller sizes, thus producing practically watertight joints.

The lands serviced by this sewer drained naturally into a watercourse. The fall was approximately 110 feet. Sewers were not necessary to be constructed for surface drainage.

Plaintiffs claim, and the proof establishes, these drains were laid out, not for the purpose of draining surface water, but as sewers for the purpose of furnishing sewerage facilities to the various subdivisions through which they were laid. They are laid out largely in subdivided property, follow the streets of such subdivisions, and with the construction of a few additional laterals they will completely serve as a sewerage system all of the buildings erected or to be erected in the subdivisions through which they run. There was no necessity for the construction of these sewers for the purpose of draining surface water. The drains are constructed with sealed joints to prevent land drainage. The joints are made watertight to prevent the seepage of sewage therefrom. No septic tanks are constructed in the

area drained, but raw sewage is dumped into the drains; 6-inch Y's are provided for every lot so as to allow the discharge of sewage from such lots into the drains. The level of the drains is below the level of cellars which would ordinarily be excavated in the subdivision served thereby. The origin of these drains indicates they were intended as sewers. They were not constructed for the purposes of land drainage, but for sewerage purposes.

The principal legal question involved is whether this case comes within the rule of *Clinton* v. *Spencer,* 250 Mich. 135; *Township of Lake* v. *Millar,* 257 Mich. 135; *Village of Oak Park* v. *Van Wagoner,* 271 Mich. 450, or whether it falls within the rule of *Hankinson* v. *Deake,* 265 Mich. 1, and *Village of Clawson* v. *Van Wagoner,* 268 Mich. 148.

If a sewer was constructed in pursuance of a petition for a drain, the drain commissioner was without jurisdiction to establish it. *Clinton* v. *Spencer, supra; Township of Lake* v. *Millar, supra.*

This is not the case of a drain constructed through low land which it was necessary to drain in order to occupy. The land drained naturally. The sole purpose of the construction of the sewers in question was for sewerage purposes for the land which had been subdivided.

The owners of these subdivisions originally contemplated constructing their own sewerage system, but, finding the drain commissioner was willing to go ahead with the project if proper petitions were filed, circulated the petitions and obtained signatures for the purpose of establishing a drain, and having a sewerage system constructed at public expense. The drain is of approved type used in sewerage construction.

This case is stronger on the facts than either the case of the *Township of Lake* v. *Millar* or *Clinton* v. *Spencer,* and we think the proceedings void.

The usual claim is made that the proceedings must have been attacked by certiorari. This question has been passed upon by this court in *Clinton* v. *Spencer, supra; Fuller* v. *Cockerill,* 257 Mich. 35; and *Township of Lake* v. *Millar, supra.* I can add nothing to what was said in these cases upon the question of the necessity of resorting to certiorari. It is not necessary where there is no jurisdiction. It is the sole remedy if the drain commissioner has jurisdiction to correct any irregularities in the drain proceedings, and when the proceedings are set aside for irregularities, they go back to the point at which they were regular and proceed from there. The court of equity had jurisdiction.

Decree of the trial court reversed and decree for plaintiff granted, with costs.

NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. NELSON SHARPE, J., did not sit.