**BLOOMFIELD VILLAGE DRAIN DIST. et al. v. KEEFE et al., and four other cases.**

Nos. 8560, 8561, 8573, 8575, 8583.

Circuit Court of Appeals, Sixth Circuit.

March 14, 1941.

Nos. 8560, 8561:

Frank C. Cook and John P. O'Hara, both of Detroit, Mich. (Charles L. Wilson and Harry J. Merritt, both of Pontiac, Mich., and John Conway Cook, of Detroit, Mich., on the brief), for appellants.

Irvin Long, of Detroit, Mich., and David M. Wood, of New York City (Goodenough, Voorhies, Long & Ryan and Dykema, Jones & Wheat, all of Detroit, Mich., and Thomson, Wood & Hoffman, of New York City, on the brief), for appellees.

Nos. 8573, 8575, 8583:

Hugh Francis and John H. Yoe, both of Detroit, Mich., Charles Retzlaff, of East Detroit, Mich., and Bert V. Nunneley, of Mt. Clemens, Mich. (Alex J. Groesbeck, of Detroit, Mich., Kenneth J. McCallum, of East Detroit, Mich., and Younglove & Chockley, of Detroit, Mich., on the brief), for appellants.

Elroy O. Jones, of Detroit, Mich., David M. Wood, of New York City, and William N. Gall, of Detroit, Mich. (Goodenough, Voorhies, Long & Ryan and Dykema, Jones & Wheat, all of Detroit, Mich., and Thomson, Wood & Hoffman, of New York City, on the brief), for appellees.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

Appellees, a committee for holders of bonds of certain Michigan drain districts, brought class suits against appellants, the five drain districts, Oakland County and Macomb County, the City of East Detroit, the Village of Centerline, and the Townships of Erin, Lake, and Warren, and various officials and taxpayers thereof, asking that the bonds be decreed to be valid obligations of the drain districts, that the special assessments therefor be held enforceable, and for other equitable relief.

Each of the drain projects has already been found in Michigan state court actions to be predominantly a sewer project and therefore illegal and void under Michigan law, the Bloomfield Village drain and the Bloomfield No. 1 storm sewer drain in Meyering Land Co. v. Spencer, 273 Mich. 703, 263 N.W. 777, and Detroit Fire & Marine Ins. Co. v. Oakland County, 284 Mich. 130, 278 N.W. 791, the Nine Mile-Halfway drain in Township of Lake v. Millar, 257 Mich. 135, 241 N.W. 237, and Center Line relief drain and the Martin drain and Branches drain in a judgment of the Circuit Court of Macomb County, Michigan, in Townshop of Erin v. County of Macomb, and other similar cases in which no appeal was taken from the judgment rendered in the Circuit Court. The question of the liability of the county is not present as to the Nine Mile-Halfway or Bloomfield Village bonds, since they antedated the enactment of Act 331 of Michigan Public Acts of 1927, c. 10, Section 15, p. 796, which provides in substance that if the amount available in the drain fund is insufficient, the county shall advance the sum out of its general fund. Otherwise the controlling questions are identical in all cases, and we decide them as one. The cases were referred to a special master, and his report in each case was confirmed by the court. The master decided that all of the projects are illegal under Michigan law; that the bonds are in the hands of purchasers in good faith without notice; that the drain commissioner had the power to issue them; that the bondholders were entitled to rely upon the truth of the recitals in the bonds, and that appellants were estopped to deny the truth of such recitals and to set up the defense of illegality. In each case the District Court held that the bonds were binding obligations; that the assessments levied to pay the bonds were legal and valid, and ordered the officials of the drain districts, and Oakland and Macomb counties, to enforce collection of the special assessments, and ordered that funds to pay the maturing bonds be advanced by the counties of Oakland and Macomb in the event the funds of the drain districts are insufficient. Appellants were enjoined from interfering in any manner with the collection of assessments or payment of the bonds. In the cases involving the two Bloomfield projects the decree specifically enjoined the institution of any proceedings to enforce the decrees of the Supreme Court of Michigan in Meyering Land Co. v. Spencer, supra.

Appellants urge that the judgments must be reversed because (1) under the Judicial Code, the federal court has no judisdiction; (2) appellees sought to confer jurisdiction upon the District Court by collusion; (3) the burden is on appellees to prove that they are holders in good faith and for value without notice of the illegality of the projects, and no such evidence exists in the record; (4) the bond issues are not negotiable under Michigan law; (5) the decisions in the state courts listed above are binding upon appellees because the county drain commissioner represented their interests in those cases.

The jurisdictional question arises under Section 24(1) of the Judicial Code, Title 28, U.S.C., Section 41(1), 28 U.S.C.A. § 41(1) which provides:

"* * * No district court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made. * * *"

While the bonds were originally purchased by residents of Michigan, they were resold to various individuals, some of them nonresidents, at not less than par and accrued interest. Since they were bearer bonds, the jurisdictional question turns upon the point whether they were issued by "any corporation."

The master decided that while the bonds were choses in action, the drain districts were corporations and that the case therefore falls within the exception of the statute. Appellants attack this conclusion upon the ground that the bonds clearly were not issued by a corporation, relying mainly upon the decision in Spiegel v. Barrett, 189 Mich. 111, 155 N.W. 456, rendered in 1915, to the effect that special assessment drainage districts are not corporations. The Supreme Court of Michigan stated in that case:

"Under our drainage law, the special assessment drainage districts are not corporations, as have been created in certain states—Illinois, for example—where the

statute bestows powers to contract and be contracted with, to sue and be sued, upon such districts. Here they have no corporate entity, and are created simply for the purpose of collecting taxes from the benefited land for the construction of the drain." 189 Mich. at page 114, 155 N.W. at page 456.

This opinion was announced at a time when under Michigan law a drainage district was not empowered to issue bonds. In 1917 the Michigan Constitution was amended to provide (Art. VIII, § 15a) that a drainage district "may issue bonds for drainage purposes within such district," and subsequently, but prior to the issuance of the bonds in suit, statutes were enacted specifically providing for the exercise of this power. Obviously the Spiegel case is not controlling here, for drainage districts now have the power to contract and be contracted with, to sue and be sued, as do the Illinois drainage districts alluded to in the Spiegel case.

Since no subsequent Michigan decision is cited upon the point, we lack the authoritative guidance of the state courts. Bearing in mind that the drain district is not denominated a corporation either in the Constitution or statutes of Michigan, we think that the holding of the master and the District Court is correct. Within the meaning of Section 24(1), the term "corporation" includes municipal corporations (Loeb v. Trustees of Columbia Tp., 179 U.S. 472, 21 S.Ct. 174, 45 L.Ed. 280) and counties. Scott County, Ark., v. Advance-Rumley Thresher Co., 8 Cir., 288 F. 739, 36 A.L.R. 937. In the Scott County case, a state statute had sought to repeal any laws making counties corporations and authorizing them to sue and be sued; but the court held that while counties are different and distinguishable from municipal corporations, and have generally a less measure of corporate life, they are corporations under the federal statute. Cf. Cowles v. Mercer County, 7 Wall. 118, 19 L.Ed. 86, which held the board of supervisors of a county to be a corporation within the meaning of the statute.

Under the reasoning of these cases, while the drain district has a less measure of corporate life than a city, it exhibits the essential characteristics of a public corporation. It is capable of acting as an entity (Royal Oak Drain Dist. v. Keefe, 6 Cir., 87 F.2d 786, 790), with an existence independent of its members and capable of being sued as obligor on its bonds. It acts in a single name fixed by law, and has succession. Hancock v. Louisville & N. R. Co., 145 U.S. 409, 12 S.Ct. 969, 36 L.Ed. 755. Bodies exercising similar functions have been held to be corporations, although not specifically so named in the statutes, as, for instance, trustees of schools and school lands (Connell v. Woodard, 5 How. 665, 6 Miss. 665, 37 Am.Dec. 173), a board of water commissioners (O'-Leary v. Board of Fire & Water Com'rs, 79 Mich. 281, 44 N.W. 608, 7 L.R.A. 170, 19 Am.St.Rep. 169), a board of managers of an exposition. Gross v. Kentucky Board of Managers, 105 Ky. 840, 49 S.W. 458, 43 L.R.A. 703. The drain district has officers, for the county drain commissioner is an officer representing the drain district. Brooks v. County of Oakland, 268 Mich. 637, 256 N.W. 576. The drain district exercises property rights, and is treated by the Michigan Legislature as an entity for assessment purposes. Comp.Laws of Michigan, 1929, Sections 4917, 4940. The funds of the drainage district, while in the custody of the county, must be kept separate from other funds, and the commissioner must levy an additional assessment to make up deficiencies in the fund as bond installments mature.

We conclude that the District Court did not err in holding that the federal court has jurisdiction under Section 24(1).

Nor are we impressed by the contention that the appellees sought by collusion to confer jurisdiction upon the District Court. This argument is based upon the fact that after the Michigan court had held analagous drain proceedings void, a committee was formed in New York City, which by letter solicited all known holders of the bonds, both resident and nonresident, for deposit of their bonds, stating that suit should be instituted in the federal court, proposing that each depositing bondholder should bear a pro rata share of the expenses of such litigation, and enclosing a copy of the suggested deposit agreement.

Appellants urge that the committee created a diversity of citizenship not theretofore existing; that actual control of the bonds was in no way conferred upon the committee, and that the suit must necessarily be dismissed as to all holders of bonds, residents of Michigan. The record shows that only two of the individual holders in the Bloomfield cases were actually

nonresidents. However, under the federal decisions the facts do not constitute evidence of collusion. The deposit agreement is substantially identical with that passed upon by this court in Royal Oak Drain Dist. v. Keefe, supra, wherein upon the authority of Bullard v. Cisco, 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254, 93 A.L.R. 141, the court held that there was a valid transfer in trust of legal title to the deposited bonds and that jurisdiction of the federal court was lawfully invoked. The motive for the transfer, under familiar principles, is immaterial. Curb & Gutter Dist. No. 37 v. Parrish, 8 Cir., 110 F.2d 902. As in the Bullard case, the transactions were not colorable nor feigned, and the bondholders have the right to select the jurisdiction as between the state and federal courts. Cohens' v. Virginia, 6 Wheat. 264, 278, 5 L.Ed. 257; Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166.

It is also urged that appellees are not holders in good faith because the original purchasers, the bond houses which negotiated the sale of the issues, knew of the illegality of the projects and therefore the burden is upon the holders to show purchase in good faith and without notice. The record shows that the bond house which negotiated the bonds for the Bloomfield projects put out a circular stating that "These bonds are issued to construct an adequate sewerage and drainage system for the district." However, this is far from indicating that it knew that sewerage was the primary purpose of the project, and that hence it was illegal and void. Par and accrued interest were paid for the bonds, and the Supreme Court of Michigan at the time when the bonds were marketed had not rendered its decisions in the Meyering Land Co. and Detroit Fire & Marine Ins. Co. cases, supra. The defense of mala fides is clearly untenable.

We do not pass upon the negotiability of the bonds. Whether or not these bonds are negotiable, the holders are entitled to claim that the recitals in the bonds estop the appellants from raising the defense of illegality of the projects. Royal Oak Drain Dist. v. Keefe, supra.

Appellees renew here their contention that the projects are legal, claiming that the recent decision of the Michigan Supreme Court in Detroit Trust Co. v. Dingman, 291 Mich. 170, 289 N.W. 118, requires that we hold that these sewers are primarily drains. This case, however, involves a separate drain project, and the opinion neither curtails not limits the effect of the Meyering Land Co., Detroit Fire & Marine Ins. Co., and Township of Lake, cases, supra, which specifically adjudicate the illegality of both of the Bloomfield drains and the Nine Mile-Halfway drain. The finding of the master, concurred in by the District Court, that the constructions under the applicable interpretation of the Michigan statute are predominantly for sewer purposes, compels us, in the absence of clear mistake, to conclude that the projects are illegal. Assuming that the District Court was correct in holding that the federal court is not bound by the decision of the state courts on factual questions, we think that the Michigan findings with respect to these identical projects are strongly persuasive, that the factual record shows them to be primarily sewers, and that the conclusion of the District Court upon this phase of the case must be affirmed.[1]

We come, then, to the principal question, which is whether, when the Michigan courts have held that these particular projects were constructed wholly without authority so that the projects and all proceedings thereunder are void, the recitals in the bonds estop appellants from defending against the bondholders upon the ground of the illegality of the projects and of the bonds. It was upon this phase of the case that the District Court gave judgment for the bondholders.

In all five drain districts the bonds are substantially identical in form. They contain recitals that the bonds are "issued under authority of and in full compliance with" cited provisions of the Michigan drain law; that they are issued for payment of the cost of construction of the drain in question "under and in pursuance of the statutes aforesaid and by lawful authority," and "that all acts, and conditions and things required to be done, pre-

---

[1] In the Meyering Land Co. case, supra [273 Mich. 703, 263 N.W. 779], speaking of the two Bloomfield projects, the Supreme Court of Michigan said:

"This is not the case of a drain constructed through low land which it was necessary to drain in order to occupy. The land drained naturally. The sole purpose of the construction of the sewer in question was for sewerage purposes for the land which had been subdivided."

cedent to and in the issuance of this bond in order to make it a binding obligation * * * have been done, have happened and have been performed in due form and time as required by law, and for the prompt payment hereof and the interest hereon the full faith, credit and resources of said Drain District are hereby irrevocably pledged." The bonds of the storm sewer district in addition contain the statement that the county shall advance from its general fund money to pay the bonds and interest thereon under conditions set forth in Act 331, Michigan Public Acts, 1927. All the bonds were signed by the county drain commissioner and countersigned by the county clerk of the county where the particular project was located. The purpose of the bonds was stated to be "for the payment of the cost of construction of" or "in anticipation of the collection of said drain taxes levied for the payment of construction of" the particular project.

In the instant cases the District Court issued sweeping injunctions against the appellants, ordering levies of assessments and advancements by the counties into the drain district funds, enjoining all acts which might hinder or embarrass the collection of the bonds. As a preliminary to the main question, we therefore consider whether the District Court erred in the scope of its decrees.

 The theory of estoppel by recital is that the holder of the instrument is entitled to rely upon the facts recited in the bond. Each of the bonds in question certified that all acts had been done in order to make the bonds a binding obligation of the drain district. No bond makes any recital with reference to its being an obligation of the township or municipality in which the project is situated. Only one set of bonds, that of the Bloomfield Storm Sewer Drain District, recites the statutory obligation of the county to advance funds on the projects. None of the bonds is executed by any township, municipal or county officer, with the exception of the county drain commissioner and the county clerk. Under Michigan law the drain commissioner does not represent any political entity except the drain district, and his representations are in no way binding upon the townships, the municipalities or the counties, for none of these political subdivisions is chargeable either with the acts of the drain commissioner or with the acts

of its officers in the administration of the drain law. Township of Cooper v. Little, 220 Mich. 62, 64, 189 N.W. 914. Moreover, the county is not liable for the refund of void drain taxes, since the drain commissioner does not act for the county in the establishment of the project. Brooks v. County of Oakland, 268 Mich. 637, 639, 256 N.W. 576. The county clerk is merely the clerical officer of the county. He has no authority to pledge the faith and credit of the county nor to certify on behalf of the county to facts stated in the bonds. His signature is placed upon the instrument as a certification of the authenticity of the signature of the county drain commissioner.

 We conclude that appellants other than the drain districts are not estopped to defend upon the ground of illegality of the various projects, and that as the proceedings are plainly null and void under Michigan law, the District Court erred (1) in ordering the appellants, municipal, township and county officials in all cases, to proceed to assess drain taxes in these projects; (2) in issuing injunctions against such officers, and (3) in ordering the counties to make advancements into the drain district funds.

The question of estoppel against the drain districts still remains to be decided.

The decree of the District Court is squarely at variance so far as its holding with reference to the validity of the bonds is concerned, with the decree in the Meyering Land Co. case, supra, in which all proceedings were set aside and held for nought and the drain commissioner for the County of Oakland was held to be without jurisdiction in the premises. The court in that case decreed:

"that the Bloomfield Village Drain District created by said Drain Commissioner for the County of Oakland, in so far as it affects or includes the premises involved in these proceedings, is hereby dissolved and set aside in like manner as if such district had never been included or affected said premises, and that all special assessments heretofore levied and spread upon the rolls of the Township of Bloomfield and County of Oakland against said premises, as a result of the construction of said Bloomfield Village Drain and Bloomfield No. 1 Storm Sewer Drain are hereby set aside and held for naught, and said premises are hereby freed and relieved

from any assessments and the liens thereof, in like manner as if such assessments had never been levied against said premises, and all such assessments against said premises shall be forthwith cancelled and removed from the books and records of the Treasurer of the Township of Bloomfield, the Treasurer of the County of Oakland, and the Auditor General of the State of Michigan."

The township treasurer of Bloomfield Township, the county treasurer of Oakland County, and the auditor general of Michigan, their successors in office, their agents, servants, representatives, and attorneys, were enjoined in the Meyering Land Co. case from taking any proceedings of any kind whatsoever to collect any of said assessments and from enforcing or attempting to enforce payment of any such assessments from the owners of such premises, or through sale of the premises against which the assessments were levied, in any manner whatsoever.

In arriving at this conclusion, the Michigan Supreme Court relied upon a number of previous Michigan decisions. In Township of Lake v. Millar, supra, 257 Mich. at pages 141, 142, 241 N.W. at page 239, the court said:

"The question is presented, whether a petition for a drain confers jurisdiction upon the drain commissioner to build a sewer; whether a petition to the drain commissioner to do something within the scope of his authority confers jurisdiction upon him to do something wholly without the scope of his authority; whether a petition to do something he has a right to do confers jurisdiction upon him to do something which he has no right to do; whether upon filing a petition for a drain which he has a right to build, the commissioner may lay out and construct a sewer which he has no right to build. * * * The drain commissioner had no jurisdiction to construct a sewer any more than to construct a Covert road. No one will contend that if the drain commissioner, when the petition for a drain was filed with him, had laid out an assessment district, established and constructed a Covert road, the plaintiffs would have been without remedy. The same legal question is here presented. The proceedings are void for want of jurisdiction."

To the same effect is Clinton v. Spencer, 250 Mich. 135, 229 N.W. 609, which held that such a sewer construction is not a mere irregularity, but that the entire proceedings were void from their inception.

In Kinner v. Spencer, 257 Mich. 142, 241 N.W. 240, the court stated that a petition for a sewer construction conferred no jurisdiction upon the drain commissioner.

In Village of Oak Park v. Van Wagoner, 271 Mich. 450, 260 N.W. 743, 746, the court held that since the statute did not authorize the construction of the projects in question or the assessment of the tax, "The acts of the drain commissioner were without warrant in law, and any tax levied and collected as a result thereof would constitute the taking of property without due process of law. Under such circumstances, no estoppel would arise to bar an action to restrain the collection of the void tax."

The decrees in the Meyering Land Co. and Detroit Fire & Marine Ins. Co. cases, supra, construing as they do the Michigan county drain law, are binding upon this court. Rulings of state courts construing state statutes were binding upon federal courts prior to the announcement of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Certainly since that decision the federal courts are governed by state law to a greater extent than formerly; but the effect of the holding of the District Court in this case is to set at nought the judgment of the state courts that these projects are absolutely void. The bonds do not recite that the various projects have been determined to be drains rather than sewers, and hence the appellants, in seeking to show that they are in fact sewers and illegal, are not seeking to establish any facts inconsistent with the recitals. While in the Michigan cases involving these projects the bondholders were not joined as parties, it is the law of Michigan that where the projects are illegal not from mere procedural deficiency, but from total lack of authority to construct the projects, bonds issued to defray the expense of such projects are void in the hands of innocent holders, and this law we follow. Erie R. Co. v. Tompkins, supra; Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290. The rule that where the issuing officials are completely lacking in power to issue bonds for the particular purpose, bona fide purchasers are not entitled to rely upon recitals in the bonds to the effect that the legal and statutory prerequisites have been complied with, was recognized in Royal Oak Drain Dist. v.

Keefe, supra. There this court said that if the drain commissioner had no jurisdiction under Michigan law, he was without power to issue bonds or to create any legal liability whatsoever in the undertaking. In this we followed the Michigan decisions. As declared in Spitzer v. Village of Blanchard, 82 Mich. 234, 244, 46 N.W. 400, 403:

"It is not entirely accurate to say that holders of bonds issued by a municipal corporation will be protected as bona fide purchasers if the corporation could, under any circumstances, issue the same. This question was considered by the Supreme Court of the United States in Dixon County v. Field, 111 U.S. 89, 4 S.Ct. 315, [28 L.Ed. 360], where the proper distinction is drawn as to irregularities in the exercise of the power conferred and the total want of power to do the act. Where there is a total want of power, under the law, in the officers or board who issue the bonds, then the bonds will be void in the hands of innocent holders, the distinction being between questions of fact and questions of law. If it is a question of fact, and the board or officers are authorized by law to determine the fact, then their determination is final and conclusive. And although it may be contrary to the fact, yet, if recited in the bond that the necessary and proper steps required by law to be taken had been taken, then the municipality is estopped from denying that they were taken. But it is held that all persons are presumed to know the law, and if the law created conditions precedent upon which the right to act at all depended, and these conditions were not complied with, and the law appointed no board or officer to determine that fact, then there could not be an innocent holder of such bonds. [Bernards Township] v. Morrison [133 U.S. 523], 10 S.Ct. 333 [33 L.Ed. 766]."

This holding has never been reversed. Hence the test in Michigan as to estoppel raised by recitals in the bonds is whether the officials making the recitals are wholly without power in the premises. If so, no estoppel arises.

Appellants rely upon certain Michigan decisions which they claim are contra, but they are distinguishable in principle. In Thompson v. Village of Mecosta, 127 Mich. 522, 86 N.W. 1044, and Schmid v. Village of Frankfort, 131 Mich. 197, 91 N.W. 131, the villages themselves took part in a false recital, contrary to facts later sought to be asserted. In Gibbs v. School Dist., 88 Mich. 334, 50 N.W. 294, 26 Am.St.Rep. 295, there was not a total lack of power in the officials making the recitals, as here, but failure to comply with statutory provisions.

We are unable, under the Michigan decisions with reference to these drains, to avoid the conclusion that the drain commissioners had no jurisdiction. The holding of the Michigan courts upon this subject is a conclusion of law and binding here. Since the drain commissioners were without jurisdiction, they were totally without power to make recitals binding upon the drain district, and this circumstance is fatal to any claim of estoppel. First Wisconsin National Bank v. Bessemer Tp., 286 Mich. 426, 282 N.W. 203; Spitzer v. Village of Blanchard, supra; Chemical Bank & Trust Co. v. County of Oakland, 264 Mich. 673, 251 N.W. 395. The recital "that all acts, conditions and things required to be done have been performed as required by law" was a legal conclusion upon which no purchaser was entitled to rely. First Wisconsin National Bank v. Bessemer Tp., supra. An examination of the records which the statute required the drain commissioner to maintain (Section 10, c. 2, Act 316, Michigan Public Acts, 1923) would have revealed all the facts necessary for a determination that the project was illegal. A public official who is not empowered to issue bonds cannot create such power by recitals which he may incorporate in the bonds he issues. Portsmouth Savings Bank v. Ashley, 91 Mich. 670, 52 N.W. 74, 30 Am.St.Rep. 511.

The officers of the drain district represented all the creditors of the district, including the bondholders, in the state court cases, and thus appellants had notice and were given their day in court in those cases. In the cases where these projects have been found invalid by the Supreme Court of Michigan or lower state courts whose judgments have become final, the drain commissioners were parties and the holdings were to the effect that such illegality made the entire proceedings void, deprived the drain commissioner of jurisdiction in the premises, and required cancellation of the assessments. Appellees were not made parties to the suits in the state court, and the validity of the bonds was not there in issue, and upon this ground the District Court held that the Michigan decisions did not bind the appellees in the instant cases. However, un-

der the decision of the United States Supreme Court in Kersh Lake Drainage Dist. v. Johnson, 309 U.S. 485, 60 S.Ct. 640, 84 L.Ed. 881, 128 A.L.R. 386, announced subsequent to the decision of the District Court herein, those cases are res judicata as to the determinative facts of this controversy. In the cited case an order of permanent injunction had been issued against the drainage commissioners of a district in Arkansas in a state court action brought by a taxpayer who claimed to have fully paid his drainage assessment. In a later action to collect assessments pursuant to a decree in favor of nonresident bondholders, it was held that the drainage commissioners had represented the bondholders in the original case, so that notice and opportunity to be heard had been given the bondholders, and that the decision that the taxpayer had paid his assessment in full was res judicata as to the bondholders. This decision, we think, is controlling here. In the Kersh Lake case, as here, application of the principle of res judicata was contested upon the ground that the nonresident bondholders had not been made parties to the earlier proceedings and had had no notice of them. But the Supreme Court of the United States held that they were not necessary parties in a suit to collect assessments, or in a suit to question the validity of the assessments, provided only that the drain commissioners are parties to the suit and that no fraud or collusion exists. The Supreme Court said 309 U.S. at page 491, 60 S.Ct. at page 644, 84 L.Ed. 881, 128 A.L.R. 386:

"These certificate holders were not entitled to be made parties in the Lincoln chancery proceedings just as in practice creditors of a corporation are not, unless otherwise provided by statute, made parties in a suit between a stockholder and the corporation to determine liability on a stock subscription, between the corporation and a third person to recover corporate assets, or in a suit brought against the corporation by creditors, stockholders or officers."

There is no essential difference between the statutes of Arkansas and Michigan dealing with this situation. Neither statute provides that the creditors or bondholders shall be made party, the Michigan statute requiring only that in any suit brought to set aside any drain tax or in any way attacking the legality of any drain proceedings, the drain commissioner shall be joined as party to the suit (Section 14, c. 10, Act 316, Michigan Public Acts, 1923). In the Kersh Lake case, supra, the Supreme Court pointed out that the Arkansas statute contemplated "that the Commissioners should represent the collective and corporate interests of the District, in litigation between the District and a landowner involving matters personal to the landowner." The Supreme Court of Michigan has held that "The drain commissioner in a peculiar sense stands as the representative of those who are interested in the drain and in the collection of the tax." Godkin v. Rutterbush, 147 Mich. 116, 110 N.W. 505, 506. This holding makes the Kersh Lake case squarely applicable to the instant case.

In the Kersh Lake case the bondholders had no actual notice of the original proceedings, and yet they were held to be bound by the state court injunction. In the Meyering Land Co. case, supra, the drain commissioner in fact pleaded the existence of outstanding bonds, and counsel representing one of the bondholders here filed a brief which raised the question of estoppel by recitals held to be decisive of this litigation in the District Court. Thus one of the bondholders had actual notice of the proceeding and participated therein, and in that particular the case is stronger against the bondholders here than against the bondholders in the Kersh Lake case.

The appellees argue that the drain commissioner might not have protected their interests because he would be antagonistic to the bondholders. In the Meyering Land Co. case, supra, it appears that in fact he did protect their interest, and if not, they could have intervened in the litigation. Be that as it may, we are bound by the decision of the Supreme Court applicable here in the light of the Godkin case, supra, and hold that the cases of Meyering Land Co. v. Spencer and Detroit Fire & Marine Ins. Co. v. County of Oakland, supra, and similar state cases, are binding upon these appellees.

It follows that the decrees of the District Court in all five cases are erroneous. The decrees are reversed, and in each case the bill of complaint is dismissed.